**IN THE UNITED STATED DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

COTTON STATES MUTUAL            *
INSURANCE COMPANY,
                                *
        Plaintiff,
                                *        Civil Action No.: 07-CV-843
v.
                                *
ROBERT STANLEY DANIEL
                                *
        Defendant.


**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF
PLAINTIFF COTTON STATES MUTUAL INSURANCE COMPANY**

This is an action for declaratory judgment in which Cotton States Mutual Insurance Company, ("Cotton States") seeks a ruling it does not owe Defendant Robert Stanley Daniel ("Daniel") a duty to defend or indemnify him in a lawsuit filed against him by, BY, a Minor, by and through her Next Friend and Mother, Paula Yates. ("Yates lawsuit") The Yates lawsuit as plead falls squarely within the exclusions of the Cotton State policy. As a result, Cotton States is entitled to summary judgment as it owes neither defense nor indemnity to Daniel in the Yates lawsuit.

**I. UNDISPUTED STATEMENT OF FACTS**

**A. POLICY LANGUAGE**

Cotton States issued a homeowner's policy to Daniels with a policy period beginning November 4, 2005. (Policy, attached as Exhibit "A") The Policy provides liability coverage as follows:

**SECTION II—LIABILITY COVERAGES**

**COVERAGE E – Personal Liability**

If a claim is made or a suit is brought against a insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable; and

2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false, or fraudulent. We may investigate and settle any claim for suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability. (Policy at pg. 10)

* * *

**DEFINITIONS**

1. "bodily injury" means bodily harm, sickness or disease, including required care, loss of service and death that results.

5. "occurrence" means an accident, including exposure to conditions, which results, during the policy period, in:

    a. bodily injury; or

    b. property damage. (Id. at pg. 1)

* * *

The policy provides exclusions for liability as follows:

**SECTION II – EXCLUSIONS**

**COVERAGE E – Personal Liability and Coverage F**
**-- Medical Payments to Others do no apply to bodily injury or property damage:**
a. which is expected or intended by the insured;
b. arising out of business pursuits of an insured or the rental or holding for rental of any part of any premises by an insured.
c. arising out of the rendering of or failure to render professional service; (Id. at pg. 11)

The following exclusion is added to Coverage E – Personal Liability. This policy does not cover and will not pay for bodily injury or property damage which arises out of:

    1. the transmission of a communicable disease by an insured;

    2. sexual misconduct, sexual molestation, corporal punishment or physical or mental abuse by an insured whether or not the acts are in violation of penal or criminal statutes. (Id. at pg. 16)

    The policy does not provide coverage for the allegations contained in the Yates lawsuit.

**B. UNDERLYING ALLEGATIONS**

1.      On July 11, 2007, BY, a Minor, by and through her Next Friend and Mother, Paula Yates, filed a lawsuit against Daniels in the Circuit Court of Randolph County, Alabama. (Yates Complaint, attached as Exhibit "B")

2.      Yates alleged in her complaint that Daniel was the Pastor of El Bethel Baptist Church, ("Church") and the Administrator of the Pearls of Promise Girls Academy (Academy") along with El Bethel Baptist Christian School. ("School") *(*Yates Complaint*, ¶ 3)* Yates asserted that between October 2005 and May 2007, her minor child "BY" was enrolled and attended the School and Academy. (<u>Id</u>. at ¶ 8*)* During this time, Yates alleged her minor child resided in the parsonage and/or residence quarters on the premises of the Church. (Id.)

3.      Yates alleged that Daniels used his position of authority to engage the minor "in inappropriate and perverted acts." (<u>Id</u>. ¶ 9) It is further alleged Daniel has used his position "to satisfy his own perverted desires and prurient interests." (<u>Id</u>.)   Further, the lawsuit asserted Daniel "sexually molested the minor" describing specifically the acts alleged to have occurred.  (<u>Id</u>. at ¶ 11)

4.      The Complaint further asserted Defendant Daniel committed physical and sexual assault on the minor child and physically and verbally "harassed and intimidated the minor" (<u>Id</u>.) The alleged assaults, harassment and intimidation  as well as other acts complained of allegedly occurred on the grounds of the Church, Academy and School and resulted in Yates suing for physical and emotional distress allegedly caused to "BY". (See Yates Complaint)

5.    The Yates' Complaint attached hereto as Exhibit "B" contains the following: (I)  a claim for sexual assault and unlawful battery; (II) a claim the church, academy, school and Yates were negligent and/or wanton; (III) a claim for negligent or wanton intentional infliction of emotional distress; (IV) invasion of privacy claim; (V) a claim for breach of fiduciary duty; and (VI) a claim for outrage.  Counts I through VI seek non specific compensatory and punitive damages.

6.    Daniel has made demand upon Plaintiff Cotton States to provide defense and indemnity pursuant to his Home Insurance Policy for the complaint brought by Yates.

## II. LEGAL ARGUMENT

### A. Description of the Duty Owed by Insurer

An insurer owes a duty to the insured to defend claims based upon allegations of the complaint which fall within coverage. American States Ins. Co. v. Cooper, 518 So. 2d 708 (Ala. 1987) However, an insurer owes no duty to either defend or indemnify an insured for claims which fall outside of coverage. See Alfa Specialty Ins. Co. v. Jennings, 906 So.2d 195 (Ala. Civ. App. 2005).

### B. The Occurrence at Issue Defeats Coverage

The Policy provides liability coverage only for claims arising out of an "occurrence," which the policy defines as an *accident*, including continuous or repeated exposure to substantially the same general harmful conditions, which results during the policy period in bodily injury or property damage. (Policy at pg. 1) (emphasis added) In insurance law, term "accidental" means that which is unexpected and unintended, happening by chance. National Sec. Ins. Co. v. Ingalls, 323 So.2d 384

(Ala.Civ.App.,1975)   Based upon this definition, in order to satisfy the policies occurrence requirement,  the allegations contained in the Yates lawsuit must allege acts performed by Daniels that were unexpected and unintended.

The Yates lawsuit asserts claims against Daniel for sexual assault and battery; intentional infliction of emotional distress; invasion of privacy; breach of fiduciary duty; and outrage, which all arise out of his alleged sexual misconduct and molestation of the minor child. The claims asserted against Daniel contain no allegation that his actions were accidental.  In fact, each claim alleges that Daniel's acts were willful and malicious. (Yates Complaint at ¶ 17, 22, 27, 32, 37, and 41) "Willfulness is the conscious doing of some act ... under knowledge of existing conditions accompanied with a design or purpose to inflict injury." Alabama Pattern Jury Instructions-Civil 29.01 (1974). Thus, as alleged, Daniel's acts were not unexpected or unintended, but were willful. Accordingly, coverage does not exist for the claims asserted against Daniels because the policies occurrence requirement cannot be satisfied.

*C. The Intentional Act Exclusion Defeats Coverage*

**1. Sexual Assault and Battery**

The Cotton States Homeowner's Policy ("Policy") does not provide coverage for the claims for sexual assault and battery asserted against Daniels. The Policy contains an exclusion for personal liability for bodily injury or property damage which is expected or intended by the insured. (Policy at pg. 10 ) The Yates lawsuit alleged that Daniel maliciously, willfully, wantonly and with reckless disregard did sexually assault and inflict physical and forcible contact on the minor child. (Yates Complaint at ¶ 15)

In <u>State Farm Fire and Casualty Company v. Davis</u>, 612 So. 2d 458 (1993), the Alabama Supreme Court held that an intentional act exclusion similar to the one contained in the Cotton States Policy at issue negated the existence of coverage for improper sexual contact. The Court initially dealt with the situation where an insured sought indemnification for damages assessed because of sexual abuse or molestation of a child. The Court adopted the inferred-intend rule which stands for the proposition that the intent to injure is inferred as a matter of law. <u>Id</u>. at 464. The opinion went on to state that "a person who sexually manipulates a minor cannot expect his insurer to cover his misconduct and cannot obtain such coverage simply by saying that he did not mean any harm." <u>Id</u>. at 467. The Court further held that "our holding also mandates that in cases of this kind the insurer has no duty to indemnify the insured and no duty to defend the insured." <u>Id</u>.

Relying upon <u>Davis</u>, since Daniel is alleged to have committed sexual abuse of a minor child, his intent to harm is inferred as a matter of law. Thus, coverage does not exist for the claims for sexual assault and battery asserted against Daniels as the intentional act exclusion applies to defeat the possibility of coverage.

## 2. Negligence, wantonness, intentional infliction of emotional distress, invasion of privacy, breach of fiduciary duty, and outrage

The same analysis regarding the Policies occurrence requirement set out above applies here with equal force. Additionally, in <u>Ladner & Co v. Southern Guaranty Ins. Co.</u>, 347 So. 2d 100 (Ala. 1977), the Alabama Supreme Court concluded that if a court could look to the complaint and find allegations of intentional acts, that would be sufficient for the Court to conclude that there is no coverage for those allegations. As discussed above, the claims asserted against Daniel all allege that his acts were willfull.

(Yates Complaint at p. ¶ 17, 22, 27, 32, 37, and 41) As alleged, Daniel's acts were not unexpected or unintended, but were willful and intended. Thus, coverage does not exist for the underlying claims for negligence, wantonness, intentional infliction of emotional distress, invasion of privacy, breach of fiduciary duty and outrage asserted against Daniels as the intentional act exclusion applies to defeat the possibility of coverage.

### D. The Sexual Misconduct and Physical/Mental Abuse Exclusions Defeat Coverage

The Cotton States Policy contains an exclusion for sexual misconduct, sexual molestation, or physical and/or mental abuse by an insured. (Policy at pg. 16) As explained in Davis, in "cases involving sexual misconduct of a minor child, the insurer has no duty to indemnify the insured and no duty to defend the insured." Id. at 467. When there is no ambiguity in an insurance policy, courts must enforce the policy as written and cannot defeat express provisions, including exclusions. St. Paul Mercury Ins. Co. v. Chilton-Shelby Mental Health Ctr., 595 So. 2d 1375,1377 (Ala. 1992) Based upon this exclusion and the holding in Davis, coverage does not exist for the claims for sexual assault and battery asserted against Daniels.

The remaining claims for negligence, wantonness, intentional infliction of emotional distress, invasion of privacy, breach of fiduciary duty, and outrage each contain allegations against Daniel that arise out of his alleged physical abuse of the minor child. (Yates Complaint at p. ¶ 15, 20, 24, 30 and 35) The policy does not provide coverage for bodily injury that arises from sexual misconduct, sexual molestation, or physical or mental abuse caused by an insured. (Policy at pg. 16) Thus, coverage does not exist for the claims for negligence, wantonness, intentional infliction of emotional

distress, invasion of privacy, breach of fiduciary duty, and outrage asserted against Daniels as the exclusion for physical abuse applies to defeat the possibility of coverage.

**E. The Business Exclusion Defeats Coverage**

In the present case, the Yates lawsuit filed against Daniels affirmatively alleges that at all material times, he was a Pastor/Administrator and the minor child was a student. The Policy contains an exclusion for personal liability for bodily injury or property damage which arises out of business pursuits of an insured. (Policy at pg. 16) The policy defines business to include trade, profession or upation. (Id. at pg. 1)

The allegations made against Daniel arise from his conduct as a Pastor and Administrator. The Complaint alleges that Daniels used his position of authority to engage the minor "in inappropriate and perverted acts" and "to satisfy his own perverted desires and prurient interests." *(Yates Complaint, ¶ 9)* The alleged acts of sexual misconduct and molestation allegedly occurred on the grounds of the Church, Academy and School where Daniel's was employed. (Id.) Accordingly, the business exclusion should apply to defeat the possibility for coverage.

### III. CONCLUSION

In examining the allegations of the Complaint, and the language contained in the Policy, it is clear that Cotton States has not duty to defend or indemnify Daniels because the facts alleged provide no basis for coverage with respect to the insurance contract. Cotton States is entitled to summary judgment that it owes neither a defense or indemnity to Daniel in the Yates lawsuit.

/s/ WILLIAM P. BLANTON
JANNEA S. ROGERS
WILLIAM P. BLANTON
Adams and Reese LLP
11 N. Water Street, Ste 23200
Mobile, Alabama  36602
251.433.3234
251.438.7733  facsimile
jannea.rogers@arlaw.com
billy.blanton@arlaw.com

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this the 22nd day of May, 2008 electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following and that I hereby certify that I have mailed by placing a copy of same in the United States Mail, first-class postage prepaid and properly addressed to those non CM/ECF participants:

John A. Tinney, Esq.
P. O. Box 1430
Roanoke, Alabama  36274

/s/ William P. Blanton
OF COUNSEL

# Cotton States Mutual Insurance Company

## A MUTUAL COMPANY  —  NONASSESSABLE POLICY



# Homeowners Policy

**Cotton States INSURANCE®**

EXHIBIT

A

# Our Most Important Policy Is Trust.

## CONTINUOUS RENEWAL PLAN

Subject to the consent of this company, and subject to the rates, rules and forms then in effect for this Company, this policy may be continued in force by payment of the required continuation premium for each successive policy term.  Such continuation premium must be paid to the Company on or before the expiration of the then current policy term and if not so paid the policy shall terminate.

## MORTGAGEE  PLEASE NOTE

This is a continuous renewal policy.  A current policy declaration need not be mailed to a mortgagee (or trustee) each renewal date due to the conditions set forth below:

YOUR INTEREST WILL BE PROTECTED.  UNDER THE TERMS OF THIS POLICY, COTTON STATES MUTUAL INSURANCE COMPANY GUARANTEES YOU THAT YOUR INTEREST SHALL NOT TERMINATE UNTIL THE EXPIRATION OF AT LEAST A TEN (10) DAY NOTICE OF CANCELLATION, SUCH NOTICE BEING MAILED BY CERTIFICATE OF MAILING TO YOUR OFFICES.

THIS POLICY JACKET TOGETHER WITH HOMEOWNERS FORM, DECLARATIONS AND ENDORSEMENTS, IF ANY ISSUED TO FORM A PART THEREOF, COMPLETES THIS POLICY.

Cotton States Mutual Insurance Company     244 Perimeter Center Parkway N.E.     Atlanta, Georgia 30346

BP 1051H (12/90)

# YOUR HOMEOWNERS POLICY— QUICK REFERENCE

## DECLARATIONS PAGE

Your Name
Location of Your Residence
Policy Period
Coverages
Amounts of Insurance
Deductible

| | | Beginning On Page | | | Beginning On Page |
|---|---|---|---|---|---|
| SECTION I YOUR PROPERTY | AGREEMENT | 1 | SECTION II YOUR LIABILITY | COVERAGES  Personal Liability  Medical Payments to Others | 10 |
| | DEFINITIONS | 1 | | | |
| | COVERAGES  Property Coverages  Loss of Use  Additional Coverages  Debris Removal  Trees, Shrubs and Plants  Credit Card  Loss Assessment | 2 | | EXCLUSIONS | 11 |
| | | | | ADDITIONAL COVERAGES  Claim Expenses  First Aid Expenses  Damage to Property of Others  Loss Assessment | 13 |
| | PERILS INSURED AGAINST | 5 | | CONDITIONS  Limit of Liability  Duties After Loss | 14 |
| | EXCLUSIONS | 7 | | | |
| | CONDITIONS  Insurable Interest  Duties After Loss  Loss Settlement  Mortgage Clause | 8 | SECTION I and SECTION II | CONDITIONS  Policy Period  Cancellation  Non-Renewal  Automatic Termination | 15 |

IN WITNESS WHEREOF, this company has executed and attested these presents; but this policy shall not be valid unless countersigned by duly authorized Agent of this company at the agency hereinbefore mentioned.

*Cindy M Swinson*
Secretary

*J Ridley Howard*
President

## MUTUAL POLICY CONDITIONS (APPLICABLE TO COTTON STATES MUTUAL INSURANCE COMPANY)

This policy is issued by a Mutual Company having special regulations lawfully applicable to its organization, membership, policies or contracts of insurance, of which the following shall apply to and form a part of this policy.

This policy is nonassessable. The policyholder is a member of The Company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors of the Company in accordance with the provisions of law, in the distribution of dividends so fixed and determined.

The Insured is hereby notified that by virtue of this policy, he is a member of Cotton States Mutual Insurance Company and is entitled to vote either in person or by proxy at any and all meetings of The Company. The annual meeting of the policyholders is held at the home office of the Company, 244 Perimeter Center Parkway, N.E., Atlanta, Georgia 30346-2397, on the first Tuesday after the fourth Monday of April each year at 10:30 a.m., Atlanta time.

# AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

# DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declaration and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. **"bodily injury"** means bodily harm, sickness or disease, including required care, loss of services and death that results.

2. **"business"** includes trade, profession or upation.

3. **"insured"** means you and residents of your household who are:

   a. your relatives; or

   b. other persons under the age of 21 and in the care of any person named above.

   Under Section II, **"insured"** also means:

   c. with respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3a or 3b above. A person or organization using or having custody of these animals or watercraft in the course of any **business** or without consent of the owner is not an **insured;**

   d. with respect to any vehicle to which this policy applies:

      (1) persons while engaged in your employ or that of any person included in 3a or 3b above; or

      (2) other persons using the vehicle on an **insured location** with your consent.

4. **"insured location"** means:

   a. the **residence premises;**

   b. the part of other premises, other structures and grounds used by you as a residence and:

   (1) which is shown in the Declarations; or

   (2) which is acquired by you during the policy period for your use as a residence;

   c. any premises used by you in connection with a premises in 4a or 4b above;

   d. any part of a premises:

      (1) not owned by an **insured;** and

      (2) where an **insured** is temporarily residing;

   e. vacant land, other than farm land, owned by or rented to an **insured;**

   f. land owned by or rented to an **insured** on which a one or two family dwelling is being built as a residence for an **insured;**

   g. individual or family cemetery plots or burial vaults of an **insured;** or

   h. any part of a premises occasionally rented to an **insured** for other than **business** use.

5. **"occurrence"** means an accident, including exposure to conditions, which results, during the policy period, in:

   a. **bodily injury;** or

   b. **property damage.**

6. **"property damage"** means physical injury to, destruction of, or loss of use of tangible property.

7. **"residence employee"** means:

   a. an employee of an **insured** whose duties are related to the maintenance or use of the **residence premises,** including household or domestic services; or

   b. one who performs similar duties elsewhere not related to the **business** of an **insured.**

8. "residence premises" me: :

a. the one family dwelling, other structures, and grounds; or

b. that part of any other building;

where you reside and which is shown as the "residence premises" in the Declarations.

"Residence pr ises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

## SECTION I — PROPERTY COVERAGES

### COVERAGE A – Dwelling

We cover:

1. the dwelling on the **residence premises** shown in the Declarations, including structures attached to the dwelling; and

2. materials and supplies located on or next to the **residence premises** used to construct, alter or repair the dwelling or other structures on the **residence premises.**

This coverage does not apply to land, including land on which the dwelling is located.

### COVERAGE B – Other Structures

We cover other structures on the **residence premises** set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located  We do not cover other structures:

1. used in whole or in part for **business;** or

2. rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

### COVERAGE C – Personal Property

We cover personal property owned or used by an **insured** while it is anywhere in the world. At your request, we will cover personal property owned by:

1. others while the property is on the part of the **residence premises** occupied by an **insured;**

2. a guest or a **residence employee,** while the property is in any residence occupied by an **insured.**

-it of liability for personal property usually located ed's residence, other than the **residence** is 10% of the limit of liability for Coverage C, whichever is greater. Personal property in a quired principal residence is not subject to this on for the 30 days from the time you begin to move operty there.

**Special Limits of Liability.** These limits do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.

2. $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps.

3. $1000 on watercraft, including their trailers, furnishings, equipment and outboard motors.

4. $1000 on trailers not used with watercraft.

5. $1000 on grave markers.

6. $1000 for loss by theft of jewelry, watches, furs, precious and semi precious stones.

7. $2000 for loss by theft of firearms.

8. $2500 for loss by theft of silverware, silver plated ware, goldware, gold plated ware and pewter ware. This includes flatware, holloware, tea sets, trays and trophies made of or including silver, gold or pewter.

9. $2500 on property, on the **residence premises,** used at any time or in any manner for any **business** purpose.

10. $250 on property, away from the **residence premises,** used at any time or in any manner for any **business** purpose.

Copyright, Insurance Services Office, Inc., 1984

**Property Not Covered.** We do not cover

1. articles separately described and specifically insured in this or other insurance;

2. animals, birds or fish;

3. motor vehicles or all other motorized land conveyances. This includes:

   a. equipment and accessories; or

   b. any device or instrument for the transmitting, recording, receiving or reproduction of sound or pictures which is operated by power from the electrical system of motor vehicles or all other motorized land conveyances, including:

      (1) accessories or antennas; or

      (2) tapes, wires, records, discs or other media for use with any such device or instrument;

   while in or upon the vehicle or conveyance.

   We do cover vehicles or conveyances not subject to motor vehicle registration which are:

   a. used to service an **insured's** residence; or

   b. designed for assisting the handicapped;

4. aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

5. property of roomers, boarders and other tenants, except property of roomers and boarders related to an **insured**;

6. property in an apartment regularly rented or held for rental to others by an **insured**;

7. property rented or held for rental to others off the **residence premises**;

8. a. books of account, drawings or other paper records; or

   b. electronic data processing tapes, wires, records, discs or other software media;

   containing **business** data. But, we do cover the cost of blank or unexposed records and media;

9. credit cards or fund transfer cards except as provided in Additional Coverages 6.

## COVERAGE D—Loss Of Use

The limit of liability for Coverage D is the total limit for all the coverages that follow.

1. If a loss covered under this Section makes that part of the **residence premises** where you reside not fit to live in, we cover, at your choice, either of the following. However, if the **residence premises** is not your principal place of residence, we will not provide the option under paragraph b. below.

   a. **Additional Living Expense,** meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or

   b. **Fair Rental Value,** meaning the fair rental value of that part of the **residence premises** where you reside less any expenses that do not continue while the premises is not fit to live in.

   Payment under a. or b. will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2. If a loss covered under this Section makes that part of the **residence premises** rented to others or held for rental by you not fit to live in, we cover the:

   **Fair Rental Value,** meaning the fair rental value of that part of the **residence premises** rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

   Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3. If a civil authority prohibits you from use of the **residence premises** as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense or Fair Rental Value loss as provided under 1 and 2 above for no more than two weeks.

The periods of time under 1, 2 and 3 above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

## ADDITIONAL COVERAGES

1. **Debris Removal.** We will pay your reasonable expense for the removal of:

   a. debris of covered property if a Peril Insured Against causes the loss; or

   b. ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

We will also pay your reasonable expense for the removal of fallen trees from the **residence premises** if:

   a.  coverage is not afforded under Additional Coverages 3. Trees, Shrubs and Other Plants for the peril causing the loss; or

   b.  the tree is not covered by this policy:

provided the tree damages covered property and a Peril Insured Against under Coverage C causes the tree to fall. Our limit of liability for this coverage will not be more than $500 in the aggregate for any one loss.

2.  **Reasonable Repairs.** We will pay the reasonable cost incurred by you for necessary repairs made solely to protect covered property from further damage if a Peril Insured Against causes the loss. This coverage does not increase the limit of liability that applies to the property being repaired.

3.  **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the **residence premises**, for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the residence premises, Vandalism or malicious mischief or Theft.

The limit of liability for this coverage will not be more than 5% of the limit of liability that applies to the dwelling, or more than $500 for any one tree, shrub or plant. We do not cover property grown for **business** purposes.

This coverage is additional insurance.

4.  **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

5.  **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6.  **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

We will pay up to $500 for:

   a.  the legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards issued to or registered in an **insured's** name;

   b.  loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an **insured's** name;

   c.  loss to an insured caused by forgery or alteration of any check or negotiable instrument; and

   d.  loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

We do not cover use of a credit card or fund transfer card:

   a.  by a resident of your household;

   b.  by a person who has been entrusted with either type of card; or

   c.  if an **insured** has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of **business** use or dishonesty of an **insured.**

This coverage is additional insurance. No deductible applies to this coverage.

Defense:

   a.  We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

   b.  If a suit is brought against an **insured** for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

   c.  We have the option to defend at our expense an **insured** or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

7.  **Loss Assessment.** We will pay up to $100 for your share of any loss assessment charged during the policy period against you by a corporation or association of property owners. This only applies when the assessment is made as a result of each direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under Coverage A—Dwelling, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the **residence premises.**

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

8. **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

   a. Perils Insured Against in Coverage C—Personal Property. These perils apply to covered building and personal property for loss insured by this additional coverage;

   b. hidden decay;

   c. hidden insect or vermin damage;

   d. weight of contents, equipment, animals or people;

   e. weight of rain which collects on a roof; or

   f. use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b, c, d, e, and f unless the loss is a direct result of the collapse of a building.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This coverage does not increase the limit of liability applying to the damaged covered property.

## SECTION I—PERILS INSURED AGAINST

We insure for direct physical loss to the property described in Coverages A, B and C caused by a peril listed below unless the loss is excluded in Section I—Exclusions:

1. **Fire or lightning.**

2. **Windstorm or hail.**

   This peril does not include loss to the inside of a building or the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self propelled missiles and spacecraft.

6. **Vehicles.**

   This peril does not include loss to a fence, driveway or walk caused by a vehicle owned or operated by a resident of the **residence premises.**

7. **Smoke,** meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief.**

This peril does not include loss to property on the **residence premises** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

9. **Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

   This peril does not include loss caused by theft:

   a. committed by an **insured;**

   b. in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied; or

   c. from that part of a **residence premises** rented by an **insured** to other than an **insured.**

   This peril does not include loss caused by theft that occurs off the **residence premises** of:

   a. property while at any other residence owned by, rented to, or occupied by an **insured,** except while an **insured** is temporarily living there. Property of a student who is an **insured** is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;

   b. watercraft, and their furnishings, equipment and outboard motors; or

   c. trailers and campers.

10. **Breakage of glass or safety glazing material** which is part of a building, storm door or storm window.

This peril does not include loss on the **residence premises** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

**11. Falling objects.**

This peril does not include loss to the inside of a building or property contained in the building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**12. Weight of ice, snow or sleet** which causes damage to a building or property contained in the building.

This peril does not include loss to an awning, fence, patio, pavement, swimming pool, foundation, retaining wall, bulkhead, pier, wharf, or dock.

**13. Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance. We also pay for tearing out and replacing any part of the building on the **residence premises** necessary to repair the system or appliance from which the water or steam escaped.

This peril does not include loss:

a. to a building caused by constant or repeated seepage or leakage over a period of weeks, months or years;

b. on the **residence premises**, if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

c. to the system or appliance from which the water or steam escaped;

d. caused by or resulting from freezing except as provided in the peril of freezing below; or

e. on the **residence premises** caused by accidental discharge or overflow which occurs off the **residence premises**.

**14. Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss caused by or resulting from freezing except as provided in the peril of freezing below.

**15. Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the **residence premises** while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

a. maintain heat in the building; or

b. shut off the water supply and drain the system and appliances of water.

**16. Sudden and accidental damage from artificially generated electrical current.**

This peril does not include loss to a tube, transistor or similar electronic component.

**17. Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

 Copyright, Insurance Services Office, Inc., 1984

## SECTION I—EXCLUSIONS

We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

1. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.

2. **Earth Movement,** meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption, landslide, mudflow, earth sinking, rising or shifting, unless direct loss by:

   a. fire;

   b. explosion; or

   c. breakage of glass or safety glazing material which is part of a building, storm door or storm window;

   ensues and then we will pay only for the ensuing loss.

   This exclusion does not apply to loss by theft.

3. **Water Damage,** meaning:

   a. flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

   b. water which backs up through sewers or drains; or

   c. water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

   Direct loss by fire, explosion or theft resulting from water damage is covered.

4. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the **residence premises.** But, if a Peril Insured Against ensues on the **residence premises,** we will pay only for that ensuing loss.

5. **Neglect,** meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss.

6. **War,** including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nu- clear weapon will be deemed a warlike act even if accidental.

7. **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of Section I—Conditions.

8. **Intentional Loss,** meaning any loss arising out of any act committed:

   a. by or at the direction of an **insured;** and

   b. with the intent to cause a loss.

Copyright, Insurance Services Office, Inc., 1984

## SECTION I — CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   a. to the **insured** for more than the amount of the **insured's** interest at the time of loss; or

   b. for more than the applicable limit of liability.

2. **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

   a. give prompt notice to us or our agent;

   b. notify the police in case of loss by theft;

   c. notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;

   d. (1) protect the property from further damage;

      (2) make reasonable and necessary repairs to protect the property; and

      (3) keep an accurate record of repair expenses;

   e. prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

   f. as often as we reasonably require:

      (1) show the damaged property;

      (2) provide us with records and documents we request and permit us to make copies; and

      (3) submit to questions under oath and sign and swear to them;

   g. send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

      (1) the time and cause of loss;

      (2) the interest of the **insured** and all others in the property involved and all liens on the property;

      (3) other insurance which may cover the loss;

      (4) changes in title or occupancy of the property during the term of the policy;

      (5) specifications of damaged buildings and detailed repair estimates;

      (6) the inventory of damaged personal property described in 2e above;

      (7) receipts for additional living expenses incurred and records that support the fair rental value loss; and

      (8) evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss Settlement.** Covered property losses are settled as follows:

   a. (1) Personal property;

      (2) Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

      (3) Structures that are not buildings;

      at actual cash value at the time of loss but not more than the amount required to repair or replace.

   b. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

      (1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

         (a) the limit of liability under this policy that applies to the building;

         (b) the replacement cost of that part of the building damaged for like construction and use on the same premises; or

         (c) the necessary amount actually spent to repair or replace the damaged building.

(2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

    (a) the actual cash value of that part of the building damaged; or

    (b) that proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

(3) To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

    (a) excavations, foundations, piers or any supports which are below the undersurface of the lowest basement floor;

    (b) those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

    (c) underground flues, pipes, wiring and drains.

(4) We will pay no more than the actual cash value of the damage unless:

    (a) actual repair or replacement is complete; or

    (b) the cost to repair or replace the damage is both:

        (i) less than 5% of the amount of insurance in this policy on the building; and

        (ii) less than $1000.

(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability on a replacement cost basis.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

    a. repair or replace any part to restore the pair or set to its value before the loss; or

    b. pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the **residence premises** is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

    a. pay its own appraiser; and

    b. bear the other expenses of the appraisal and umpire equally.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

9. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    a. reach an agreement with you;

    b. there is an entry of a final judgment; or

    c. there is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by an **insured**.

Copyright, Insurance Services Office, Inc., 1984

**12. Mortgage Clause:**

The word "mortgagee" includes trustee.

If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

a. notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

b. pays any premium due under this policy on demand if you have neglected to pay the premium; and

c. submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

If the policy is cancelled or not renewed by us, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

If we pay the mortgagee for any loss and deny payment to you:

a. we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

b. at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**13. No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**14. Nuclear Hazard Clause.**

a. "Nuclear Hazard" means any nuclear reaction, radiation, or radio active contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

b. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.

c. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**15. Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**16. Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

---

## SECTION II—LIABILITY COVERAGES

**COVERAGE E — Personal Liability**

If a claim is made or a suit is brought against an **insured** for damages because of bodily injury or **property damage** caused by an occurrence to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the **occurrence** equals our limit of liability.

**COVERAGE F— Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, x ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except **residence employees**. As to others, this coverage applies only:

1. to a person on the **insured location** with the permission of an **insured**; or

2.  to a person off the **insured location**, if the **bodily injury:**

a.  arises out of a condition on the **insured location** or the ways immediately adjoining;

b.  is caused by the activities of an **insured**;

c.  is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**; or

d.  is caused by an animal owned by or in the care of an **insured**.

---

## SECTION II—EXCLUSIONS

1.  Coverage E—Personal Liability and Coverage F —Medical Payments to Others do not apply to **bodily injury** or **property damage:**

a.  which is expected or intended by the **insured**;

b.  arising out of **business** pursuits of an **insured** or the rental or holding for rental of any part of any premises by an **insured**.

   This exclusion does not apply to:

   (1) activities which are usual to non **business** pursuits; or

   (2) the rental or holding for rental of an **insured location** :

      (a) on an occasional basis if used only as a residence;

      (b) in part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

      (c) in part, as an office, school, studio or private garage;

c.  arising out of the rendering of or failure to render professional services;

d.  arising out of a premises:

   (1) owned by an **insured**;

   (2) rented to an **insured** ; or

   (3) rented to others by an **insured**;

   that is not an **insured location** ;

e.  arising out of:

   (1) the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an **insured**;

   (2) the entrustment by an **insured** of a motor vehicle or any other motorized land conveyance to any person; or

   (3) statutorily imposed vicarious parental liability for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

   This exclusion does not apply to:

   (1) a trailer not towed by or carried on a motorized land conveyance.

   (2) a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

      (a) not owned by an **insured**; or

      (b) owned by an **insured** and on an **insured location**.

   (3) a motorized golf cart when used to play golf on a golf course.

   (4) a vehicle or conveyance not subject to motor vehicle registration which is:

      (a) used to service an **insured's** residence;

      (b) designed for assisting the handicapped; or

      (c) in dead storage on an **insured location**.

f.  arising out of:

   (1) the ownership, maintenance, use, loading or unloading of a watercraft described below;

   (2) the entrustment by an **insured** of a watercraft described below to any person; or

   (3) statutorily imposed vicarious parental liability for the actions of a child or minor using a watercraft described below.

   Watercraft:

   (1) with inboard or inboard outdrive motor power owned by an **insured**;

   (2) with inboard or inboard outdrive motor power of more than 50 horsepower rented to an **insured**;

---

(3) that is a sailing vessel, with or without auxiliary power, 26 feet or more in length owned by or rented to an **insured**; or

(4) powered by one or more outboard motors with more than 25 total horsepower if the outboard motor is owned by an **insured**. But, outboard motors of more than 25 total horsepower are covered for the policy period if:

    (a) you acquire them prior to the policy period and:

        (i) you declare them at policy inception; or

        (ii) your intention to insure is reported to us in writing within 45 days after you acquire the outboard motors.

    (b) you acquire them during the policy period.

This exclusion does not apply while the watercraft is stored.

g.  arising out of:

  (1) the ownership, maintenance, use, loading or unloading of an aircraft;

  (2) the entrustment by an **insured** of an aircraft to any person; or

  (3) statutorily imposed vicarious parental liability for the actions of a child or minor using an aircraft.

An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

h.  caused directly or indirectly by war, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

Exclusions d., e., f., and g. do not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**.

2.  **Coverage E — Personal Liability**, does not apply to:

a.  liability:

(1) for your share of any loss assessment charged against all members of an association, corporation or community of property owners;

(2) under any contract or agreement. However, this exclusion does not apply to written contracts:

    (a) that directly relate to the ownership maintenance or use of an **insure location**; or

    (b) where the liability of others is assumed by the **insured** prior to a **occurrence**;

    unless excluded in (1) above or elsewhere in this policy;

b.  **property damage** to property owned by the **insured**;

c.  **property damage** to property rented to, occupied or used by or in the care of the **insured** . This exclusion does not apply to **property damage** caused by fire, smoke or explosion;

d.  **bodily injury** to any person eligible to receive any benefits:

  (1) voluntarily provided; or

  (2) required to be provided;

by the **insured** under any:

  (1) workers' compensation law;

  (2) non occupational disability law; or

  (3) occupational disease law;

e.  **bodily injury** or **property damage** for which an **insured** under this policy:

  (1) is also an insured under a nuclear energy liability policy; or

  (2) would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by:

(1) American Nuclear Insurers;

(2) Mutual Atomic Energy Liability Underwriters;

(3) Nuclear Insurance Association of Canada;

or any of their successors; or

f.  **bodily injury** to you or an **insured** within the meaning of part a. or b. of "**insured** " as defined.

3. **Coverage F—Medical Payments Others**, does not apply to **bodily injury**:

   a. to a **residence employee** if the **bodily injury**:

     (1) occurs off the **insured location**; and

     (2) does not arise out of or in the course of the **residence employee's** employment by an **insured**;

   b. to any person eligible to receive benefits:

     (1) voluntarily provided; or

     (2) required to be provided;

   under any:

     (1) workers' compensation law;

     (2) non-occupational disability law; or

     (3) occupational disease law;

   c. from any:

     (1) nuclear reaction;

     (2) nuclear radiation; or

     (3) radioactive contamination;

   all whether controlled or uncontrolled or however caused; or

     (4) any consequence of any of these.

   d. to any person, other than a **residence employee**, of an **insured**, regularly residing on any part of the **insured location**.

## SECTION II — ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

   a. expenses we incur and costs taxed against an **insured** in any suit we defend;

   b. premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

   c. reasonable expenses incurred by an **insured** at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit;

   d. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies;

   e. prejudgment interest awarded against the **insured** on that part of the judgment we pay. If we make an offer to pay the applicable limit of liability, we will not pay any prejudgment interest based on that period of time after the offer.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. We will not pay for first aid to you or any other **insured**.

3. **Damage to Property of Others.** We will pay, at replacement cost, up to $500 per **occurrence** for **property damage** to property of others caused by an **insured**.

We will not pay for **property damage**:

   a. to the extent of any amount recoverable under Section I of this policy;

   b. caused intentionally by an **insured** who is 13 years of age or older;

   c. to property owned by an **insured**;

   d. to property owned by or rented to a tenant of an **insured** or a resident in your household; or

   e. arising out of:

     (1) **business** pursuits;

     (2) any act or omission in connection with a premises owned, rented or controlled by an **insured**, other than the **insured location**; or

     (3) the ownership, maintenance, or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

     This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an **insured**.

4. **Loss Assessment.** We will pay up to $1000 for your share of any loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

   a. each **occurrence** to which Section II of this policy would apply;

b.  liability for each act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

   (1)  the director, officer or trustee is elected by the members of a corporation or association of property owners; and

   (2)  the director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the **residence premises.**

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Section II — Coverage E — Personal Liability Exclusion 2.a.(1) does not apply to this coverage.

---

## SECTION II—CONDITIONS

1.  **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one **occurrence** will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of **insureds,** claims made or persons injured.

    Our total liability under Coverage F for all medical expense payable for **bodily injury** to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

2.  **Severability of Insurance.** This insurance applies separately to each **insured.** This condition will not increase our limit of liability for any one **occurrence.**

3.  **Duties After Loss.** In case of an accident or **occurrence,** the **insured** will perform the following duties that apply. You will help us by seeing that these duties are performed:

    a.  give written notice to us or our agent as soon as is practical, which sets forth:

       (1)  the identity of the policy and **insured;**

       (2)  reasonably available information on the time, place and circumstances of the accident or **occurrence;** and

       (3)  names and addresses of any claimants and witnesses;

    b.  promptly forward to us every notice, demand, summons or other process relating to the accident or **occurrence;**

    c.  at our request, help us:

       (1)  to make settlement;

       (2)  to enforce any right of contribution or indemnity against any person or organization who may be liable to an **insured;**

       (3)  with the conduct of suits and attend hearings and trials;

       (4)  to secure and give evidence and obtain the attendance of witnesses;

    d.  under the coverage — Damage to Property of Others — submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the **insured's** control;

    e.  the **insured** will not, except at the **insured's** own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the **bodily injury.**

4.  Duties of an Injured Person—Coverage F—Medical Payments to Others.

    The injured person or someone acting for the injured person will:

    a.  give us written proof of claim, under oath if required, as soon as is practical; and

    b.  authorize us to obtain copies of medical reports and records.

    The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5.  **Payment of Claim—Coverage F—Medical Payments to Others.** Payment under this coverage is not an admission of liability by an **insured** or us.

6.  **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

    No one will have the right to join us as a party to any action against an **insured.** Also, no action with respect to Coverage E can be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

7.  Bankruptcy of an Insured. Bankruptcy or insolvency of an **insured** will not relieve us of our obligations under this policy.

8.  Other Insurance—Coverage E—Personal Liability. This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTIONS I AND II — CONDITIONS

1. **Policy Period.** This policy applies only to loss in Section I or **bodily injury** or **property damage** in Section II, which occurs during the policy period.

2. **Concealment or Fraud.** We do not provide coverage for an **insured** who has:

   a. intentionally concealed or misrepresented any material fact or circumstance; or

   b. made false statements or engaged in fraudulent conduct;

   relating to this insurance.

3. **Liberalization Clause.** If we adopt a revision which would broaden the coverage under this policy without additional premium within 60 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.**

   A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

   b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

   Proof of mailing will be sufficient proof of notice.

   (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

   (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

      (a) if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

      (b) if the risk has changed substantially since the policy was issued.

   This can be done by letting you know at least 30 days before the date cancellation takes effect.

   (4) When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

   d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Non-Renewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

7. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

8. **Subrogation.** An **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

   If an assignment is sought, an **insured** must sign and deliver all related papers and cooperate with us.

   Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

   a. we insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

   b. **insured** includes:

      (1) any member of your household who is an **insured** at the time of your death, but only while a resident of the **residence premises**; and

      (2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

## ALABAMA AMENDATORY ENDORSEMENT

**The Endorsements Contained In This State Amendatory Endorsement Apply To Your Homeowners Policy.**

CS 300
(Ed. 01/2002)
Alabama

### SPECIAL PROVISIONS

Throughout this policy, the following is added to any provision which uses the term actual cash value:

Actual cash value is calculated as the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of covered property regardless of whether that property has sustained partial or total loss or damage.

The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

### DEFINITIONS

Under **DEFINITIONS**, items 2., 3., 5., 7., and 8., are deleted and replaced by the following and items 9., and 10., are added:

2.  "**business**" means:

    a.  a trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

    b.  any other activity engaged in for money or other compensation, except the following:

        (1) one or more activities, not described in (2) through (4) below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

        (2) volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

        (3) providing home day care services for which no compensation is received, other than mutual exchange of such services; or

        (4) the rendering of home day care services to a relative of an "insured".

3.  "**insured**" means:

    a.  you and residents of your household who are:

        (1) your relatives; or

        (2) other persons under the age of 21 and in the care of any person named above;

    b.  a student enrolled in school full-time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

        (1) 24 and your relative; or

        (2) 21 and in your care or the care of a person described in a.(1). (Your relatives).

    Under Section II, "**insured**" also means:

    c.  with respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3.a. or 3.b. above. A person or organization using or having custody of these animals or watercraft in the course of any **business** or without consent of the owner is not an **insured**;

    d.  with respect to any vehicle to which this policy applies:

        (1) persons while engaged in your employ or that of any person included in 3.a. or 3.b. above; or

        (2) other persons using the vehicle on an **insured location** with your consent.

5.  "**occurrence**" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

    a.  bodily injury; or

    b.  property damage.

7.  "**residence employee**" means:

    a.  An employee of an **insured**, or an employee leased to an **insured** by a labor leasing firm, under an agreement between an **insured** and the labor leasing firm, whose duties are related to the maintenance or use of the **residence premises**, including household or domestic services; or

    b.  One who performs similar duties elsewhere not related to the **business** of an **insured**

    A "**residence employee**" does not include a temporary employee who is furnished to an **insured** to substitute for a permanent **residence employee** on leave or to meet seasonal or short-term workload conditions.

This endorsement contains copyrighted material of the Insurance Services Office, Inc., with its permission 1990 and 1999.

8. "residence premises" means:

   a. the one family dwelling where you reside;

   b. the two family dwelling where you reside in at least one of the family units; or

   c. that part of any other building where you reside; and which is shown as the "**residence premises**" in the Declarations.

   "**Residence premises**" also includes other structures and grounds at that location.

9. "**employee**" means an employee of an **insured** or an employee leased to an **insured** by a labor leasing firm under an agreement between an **insured** and the labor leasing firm, whose duties are other than those performed by a **residence employee**.

10. "**motor vehicle**" means:

   a. a self-propelled land or amphibious vehicle; or

   b. any trailer or semi-trailer which is being carried on, towed by or hitched for towing by a vehicle described in 10.a. above.

If the Farmers Personal Liability endorsement (HO-73) is made a part of this policy, item e. of **Definition 2, "insured location"**, is deleted and replaced by the following:

   e. vacant land owned by or rented to an **insured**;

## SECTION I—PROPERTY COVERAGES

**COVERAGE B—Other Structures** is deleted and replaced by the following:

**COVERAGE B—Other Structures**

1. We cover other structures on the **residence premises** set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

2. We do not cover:

   a. land, including land on which the other structures are located;

   b. other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

   c. other structures from which any **business** is conducted; or

   d. other structures used to store **business** property.

3. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A. limit of liability.

**COVERAGE C—Personal Property**

Under **COVERAGE C—Personal Property**, the first two paragraphs are deleted and replaced by the following:

**Covered Property**

We cover personal property owned or used by an **insured** while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

1. Others, who are not residents or regular occupants of the **residence premises**, while the property is on the part of the **residence premises** occupied by an **insured**; or

2. A guest, who is not a resident or regular occupant of the **residence premises**, or a **residence employee**, while the property is in any residence occupied by an **insured**.

**Limit for Property at Other Residences**

Our limit of liability for personal property usually located at an **insured's** residence, other than the **residence premises**, is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater. However, this limitation does not apply to personal property:

1. Moved from the **residence premises** because the **residence premises** is being repaired, renovated or rebuilt and is not fit to live in or store property in; or

2. In a newly acquired principal residence for 30 days from the time you first begin to move the property there.

Under **COVERAGE C—Personal Property, Special Limits of Liability**, is deleted and replaced by the following:

1. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

2. $1,000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

3. $1,000 on watercraft of all types, including their trailers, furnishings, equipment, and outboard engines or motors.

4. $1,000 on trailers or semitrailers not used with watercraft of all types.

5. $1,000 on grave markers.

 This endorsement contains copyrighted material of the Insurance Services Office, Inc., with its permission 1990 and 1999.

6. $1,000 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

7. $2,000 for loss by theft of firearms and related equipment.

8. $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollow-ware, tea sets, trays and trophies made of silver, gold, platinum or pewter.

9. $2,500 on property, on the **residence premises**, used primarily for **business** purposes.

10. $500 on property, away from the **residence premises**, used primarily for **business** purposes. However, this limit does not apply to loss to electronic apparatus and other property described in 11. and 12. below.

11. $1,000 on electronic apparatus and accessories, while in or upon a **motor vehicle**, but only if the apparatus is equipped to be operated by power from the **motor vehicle's** electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs, or other media that can be used with any apparatus described in this category 11.

12. $1,000 on electronic apparatus and accessories, used primarily for business while away from the **residence premises** and not in or upon a **motor vehicle**. The apparatus must be equipped to be operated by power from the **motor vehicle's** electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs, or other media that can be used with any apparatus described in this category 12.

Under **COVERAGE C—Personal Property, Property Not Covered**, items 1, 3, 8, and 9 are deleted and replaced by the following and item 10 is added:

1. articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

3. **motor vehicles**:

  a. this includes:

    (1) their accessories, equipment and parts, or

    (2) electronic apparatus and accessories designed to be operated solely by power from the electrical system of the **motor vehicle**.

    Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described above.

The exclusion of property described in 3.a.(1) and 3.a.(2) above applies only while such property is in or upon the **motor vehicle**.

  b. we do cover **motor vehicles** not required to be registered for use on public roads or property which are:

    (1) used solely to service an **insured's** residence; or

    (2) designed to assist the handicapped.

8. **business** data, including such data stored in:

  a. books of account, drawings or other paper records

  b. computers and related equipment, electronic data processing tapes, wires, records discs or other software media. However, we do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market.

9. credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in **SECTION I—PROPERTY COVERAGES, ADDITIONAL COVERAGES 6**. Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.

10. water or steam.

**ADDITIONAL COVERAGES**

Under **ADDITIONAL COVERAGES**, items 1, 2, 7 and 8 are deleted and replaced by the following and items 9 and 10 are added:

1. **Debris Removal.** We will pay your reasonable expense for the removal of:

  a. debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

  b. ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

We will also pay your reasonable expense, up to $500 in the aggregate for any one loss, for the removal from the **residence premises** of:

  a. your tree felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

  b. a neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

provided the tree(s):

   a.  damage(s) a covered structure; or

   b.  does not damage a covered structure, but:

     (1)  block(s) a driveway on the **residence premises** which prevent(s) a **motor vehicle**, that is registered for road use on public roads or property, from entering or leaving the **residence premises**; or

     (2)  block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

2.  **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

This coverage:

   a.  does not increase the limit of liability that applies to the covered property;

   b.  does not relieve you of your duties, in case of a loss to covered property, as set forth in Section I Condition 2.d.

7.  **Loss Assessment.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the **residence premises**, by a corporation or association of property owners. The assessment must be made as a result of direct loss to the property, owned by all members collectively, of the type that would be covered by this policy if the property was owned by you, caused by a Peril Insured Against under Coverage A— Dwelling, other than:

   a.  earthquake; or

   b.  land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Condition 1. Policy Period, under Sections I and II Conditions, does not apply to this coverage.

This coverage is additional insurance.

8.  **Collapse.**

   a.  With respect to this Additional Coverage:

     (1)  collapse means an abrupt falling down or caving in of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

     (2)  a building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

     (3)  a part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

     (4)  a building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of crack-ing, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

   b.  We insured for direct physical loss to covered property involving collapse of a building if the collapse was caused by one or more of the following:

     (1)  the Perils Insured Against named under Coverage C;

     (2)  decay that is hidden from view, unless the presence of such decay is known to an **insured** prior to collapse;

     (3)  insect or vermin damage that is hidden from view, **unless** the presence of such damage is known to an **insured** prior to collapse;

     (4)  weight of contents, equipment, animals or people;

     (5)  weight of rain which collects on a roof; or

     (6)  use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

   c.  Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under b.(2) through (6) above, unless the loss is a direct result of the collapse of a building or any part of a building.

   d.  This coverage does not increase the limit of liability that applies to the damaged covered property.

9.  **Landlord's Furnishings.** We will pay up to $1,500 for your appliances, carpeting and other household furnishings, in each apartment on the **residence premises** regularly rented or held for rental to others by an **insured**, for loss caused by a Peril Insured Against in Coverage C, other than theft.

This endorsement contains copyrighted material of the Insurance Services Office, Inc., with its permission 1990 and 1999.

This limit is the most we will pay for any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss. This coverage does not increase the limit of liability applying to the damaged property.

**10. Ordinance or Law**

a.  You may use up to 10% of the limit of liability that applies to Coverage A (in form HO-4, you may use up to 10% of the limit of liability that applies to Building Additions and Alterations) for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1)  the construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(2)  the demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

(3)  the remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

b.  You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in 10.a. above.

c.  We do not cover:

(1)  the loss in value to any covered building or other structure due to the requirements or any ordinance or law; or

(2)  the costs to comply with any ordinance or law which requires any **insured** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**This coverage is additional insurance.**

**SECTION I—PERILS INSURED AGAINST**

Under **SECTION I—PERILS INSURED AGAINST, COVERAGE A—DWELLING and COVERAGE B—OTHER STRUCTURES**, items 2.a., 2.b., 2.d., 2.e., 2.f.(2), 2.f.(3), 2.f.(5), 2.f.(6), 2.f.(7), and 3. are deleted from Forms HO-3 and HO-5 and replaced by the following:

2.  caused by:

a.  freezing of a plumbing, heating or air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage, or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

(1)  maintain heat in the building; or

(2)  shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, or downspout or similar fixtures or equipment.

b.  freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

(1)  fence, pavement, patio, or swimming pool;

(2)  footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

(3)  retaining wall or bulkhead that does not support all or part of a building or other structure; or

(4)  pier, wharf or dock;

d.  vandalism and malicious mischief or breakage of glass and safety glazing materials, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 30 consecutive days immediately before the loss.  A dwelling being constructed is not considered vacant;

e.  mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

(1) a plumbing, heating, or air conditioning or automatic fire protective sprinkler system, or a household appliance, on the **residence premises**; or

(2) a storm drain, or water, steam or sewer pipes, off the **residence premises**.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

f. (2) mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

(3) smog, rust or other corrosion, or dry rot;

(5) discharge, dispersal, seepage, migration, release, or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage C.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.

Waste includes materials to be recycled, reconditioned or reclaimed;

(6) settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

(7) birds, vermin, rodents, insects; or animals owned or kept by an **insured**.

Exception to item 2.f.: unless the loss is otherwise excluded, we cover loss to property covered under Coverage A or B resulting from an accidental discharge or overflow of water or steam from within a:

(1) storm drain, or water, steam or sewer pipe, off the **residence premises**; or

(2) plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the **residence premises**. This includes the cost to tear out and replace any part of a building, or other structure, on the **residence premises**, but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the **residence premises**.

We do not cover loss to the system or appliance from which this water or steam escapes.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump, or related equipment or a roof drain, gutter, down spout or similar fixtures or equipment.

Section I—Exclusions c.(1) and c.(3) that apply to surface water and water below the surface of the ground do not apply to loss by water covered under 2.e. and 2.f. above.

3. excluded under Section I—Exclusions.

Under 1 and 2 above, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

Under **SECTION I—PERILS INSURED AGAINST**, items 2 and 6 are deleted from Form HO-6 and replaced by the following:

2. **Windstorm or Hail.**
This peril does not include loss to the inside of a building or the property contained in a building caused by rain, snow, sleet, sand, or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening. This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

6. **Vehicles**
This peril does not include loss to a fence, driveway or walk caused by a vehicle owned or operated by a resident of the **residence premises**.

Under **SECTION I—PERILS INSURED AGAINST**, item 7 is deleted from Forms HO-2, HO-4 and HO-6 and from **COVERAGE C—PERSONAL PROPERTY** from Forms HO-3 and HO-5 and replaced by the following:

7. **Smoke**, meaning sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment. This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

Under **SECTION I—PERILS INSURED AGAINST**, item 9 is deleted from Forms HO-2, HO-4 and HO-6 and from **COVERAGE C—PERSONAL PROPERTY** from Forms HO-3 and HO-5 and replaced by the following:

9. **Theft**, including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

This peril does not include loss caused by theft:

a. committed by an **insured**;

b. in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

c. from that part of a residence premises rented by an insured to someone other than another insured; or

d. that occurs off the residence premises of:

(1) property while at any other residence owned by, rented to, or occupied by an insured except while an insured is temporarily living there. Property of an insured who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 60 days immediately before the loss;

(2) watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

(3) trailers, semitrailers and campers.

Under SECTION I—PERILS INSURED AGAINST items 11 is deleted from Form HO-6 and replaced by the following:

11. Falling Objects.
This peril does not include loss to the inside of a building or property contained in the building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

Under SECTION I—PERILS INSURED AGAINST, item 12 is deleted from Forms HO-2 and HO-6 and replaced by the following:

12. Weight of ice, snow or sleet which causes damage to a building or property contained in the building.

This peril does not include loss to an awning, fence, patio, pavement, swimming pool, footing, foundation, wall, any other structure or device that supports all or part of a building or other structure, retaining wall or bulkhead that does not support all or part of a building or other structure, pier, wharf or dock.

Under SECTION I—PERILS INSURED AGAINST, item 12 is deleted from COVERAGE C—PERSONAL PROPERTY from Forms HO-3 and HO-5 and replaced by the following:

12. Accidental discharge or overflow of water or steam meaning accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water or steam escaped;

b. caused by or resulting from freezing except as provided in the Peril Insured Against of Freezing below;

c. on the residence premises caused by accidental charge or overflow which occurs off the residence premises; or

d. caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings or a surface.

In this peril a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

Section I—Exclusions c.(1) and c.(3) that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

Under SECTION I—PERILS INSURED AGAINST, item 13 is deleted from Forms HO-2, HO-4 and HO-6 and replaced by the following:

13. Accidental discharge or overflow of water or steam meaning accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance. In Forms HO-2 and HO-6, this includes the cost to tear out and replace any part of a building or other structure on the residence premises, which is covered under Coverage A, but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to the building on the residence premises.

This peril does not include loss:

a. to the system or appliance from which the water or steam escaped;

b. caused by or resulting from freezing except as provided in the Peril Insured Against of Freezing below;

c. on the residence premises caused by accidental charge or overflow which occurs off the residence premises; or

d. caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings or a surface.

In Forms HO-2 and HO-6, this peril does not include loss on the residence premises, if the unit has been vacant for more than 30 consecutive days immediately before the loss. A unit being constructed is not considered vacant.

In this peril a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

Section I—Exclusions c.(1) — d c.(3) that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

Under **SECTION I—PERILS INSURED AGAINST**, item 13 is deleted from **COVERAGE C— PERSONAL PROPERTY** from Forms HO-3 and HO-5 and replaced by the following:

13. **Sudden and Accidental Tearing Apart, Cracking, Burning or Bulging** meaning sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

    We do not cover loss caused by or resulting from freezing under this peril.

Under **SECTION I—PERILS INSURED AGAINST** item 14 is deleted from Forms HO-2, HO-4 and HO-6 and replaced by the following:

14. **Sudden and Accidental Tearing Apart, Cracking, Burning or Bulging** meaning sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

    We do not cover loss caused by or resulting from freezing under this peril.

Under **SECTION I—PERILS INSURED AGAINST**, item 14 is deleted from **COVERAGE C— PERSONAL PROPERTY** from Forms HO-3 and HO-5 and replaced by the following:

14. **Freezing** meaning freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

    a. maintain heat in the building; or

    b. shut off the water supply and drain all systems and appliances of water.

    However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

    In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

Under **SECTION I—PERILS INSURED AGAINST**, item 15 is deleted from Forms HO-2, HO-4 and HO-6 and replaced by the following:

15. **Freezing** meaning freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

    a. maintain heat in the building; or

    b. shut off the water supply and drain all systems and appliances of water.

    However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

    In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

Under **SECTION I—PERILS INSURED AGAINST**, item 15 is deleted from **COVERAGE C—PERSONAL PROPERTY** from Forms HO-3 and HO-5 and replaced by the following:

15. **Sudden and Accidental Damage from Artificially Generated Electrical Current**

    This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

Under **SECTION I—PERILS INSURED AGAINST**, item 16 is deleted from Forms HO-2, HO-4 and HO-6 and replaced by the following:

16. **Sudden and Accidental Damage from Artificially Generated Electrical Current**

    This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

**SECTION I—CONDITIONS**

Under **3. Loss Settlement** in Forms HO-2 and HO-3 the first paragraph, the first paragraph of item b., and items b.(1) and b.(4) are deleted and replaced by the following:

3. **Loss Settlement.** In this Condition 3., the terms "costs to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in 10. Ordinance of Law under **Section I— ADDITIONAL COVERAGES.** Covered property losses are settled as follows:

    b. Buildings covered under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

       (1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair

or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

(a) the limit of liability under this policy that applies to the building;

(b) the replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

(c) the necessary amount actually spent to repair or replace the damaged building.

If the building is rebuilt at a new premises, the cost described in b. above is limited to the cost which would have been incurred if the building had been built at the original premises.

(4) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in 3.b.(1) and 3.b.(2) above.

However, if the cost to repair or replace the damage is both:

(a) less than 5% of the amount of insurance in this policy on the building; and

(b) less than $2,500;

we will settle the loss as noted in 3.b.(1) and 3.b.(2) above whether or not actual repair or replacement is complete.

Under 3. **Loss Settlement** in Form HO-6 the first paragraph is deleted and replaced by the following:

3. **Loss Settlement.** In this Condition 3., the terms "repaired" or "replaced" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in 10. Ordinance of Law under Section I–ADDITIONAL COVERAGES. Covered property losses are settled as follows:

## SECTION II—LIABILITY COVERAGES

Under **Coverage E, Personal Liability**, item 1. is deleted and replaced by the following:

1. pay up to our limit of liability for the damages for which an **insured** is legally liable. Damages include prejudgment interest awarded against an **insured**; and

## SECTION II EXCLUSIONS

Under item **1. Coverage E—Personal Liability** and **Coverage F—Medical Payments to Others**, items a., b., e., f., and g. are deleted and replaced by the

following and item i. is added in all Forms and Endorsement HO-73:

a. which is expected or intended by an **insured** even if the resulting **bodily injury** or **property damage** is:

(1) of a different kind, quality or degree than initially expected or intended; or

(2) sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this exclusion does not apply to **bodily injury** resulting from the use of reasonable force by an **insured** to protect persons or property;

b. arising out of or in connection with a **business** conducted from an **insured location** or engaged in by an **insured**, whether or not the **business** is owned or operated by an **insured** or employs an **insured**. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the **business**. This exclusion does not apply to:

(1) the rental or holding for rental of an **insured location**:

(a) on an occasional basis if used only as residence;

(b) in part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(c) in part, as an office, school, studio or private garage; and

(2) an **insured** under the age of 21 years involved in a part-time or occasional, self-employed **business** with no employees;

e. arising out of the:

(1) ownership of a **motor vehicle** by an **insured**;

(2) maintenance, occupancy, operation, use, loading or unloading of **motor vehicles** by any person;

(3) entrustment of a **motor vehicle** by an **insured** to any person;

(4) failure to supervise or negligent supervision of any person involving a **motor vehicle** by an **insured**; or

(5) vicarious liability, whether or not imposed by law, for the actions of a child or minor using a **motor vehicle**;

if, at the time and place of an **occurrence**, the involved **motor vehicle**:

This endorsement contains copyrighted material of the Insurance Services Office, Inc., with its permission 1990 and 1999.

(1) is registered for use on public roads or property;

(2) is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the **occurrence**; or

(3) is being:

    (a) operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

    (b) rented to others;

    (c) used to carry persons or cargo for a charge; or

    (d) used for any **business** purpose except for a motorized golf cart while on a golfing facility.

If Exclusion e. does not apply, there is still no coverage for **bodily injury** or **property damage** unless the **motor vehicle** is:

(1) in dead storage on an **insured location** ;

(2) used solely to service an **insured's** residence;

(3) designed to assist the handicapped and, at the time of an **occurrence**, it is:

    (a) being used to assist a handicapped person, or

    (b) parked on an **insured location** ;

(4) designed for recreational use off public roads and:

    (a) not owned by an **insured**; or

    (b) owned by an **insured** provided the **occurrence** takes place on an **insured location** as defined in Definitions 4.a., 4.b., 4.d., 4.e., or 4.h.; or

(5) a motorized golf cart, that at the time of an **occurrence**, is within the legal boundaries of a golfing facility and is parked or stored there, or being used by an **insured** to:

    (a) play the game of golf or for other recreational or leisure activities allowed by the facility;

    (b) travel to or from an area where **motor vehicles** or golf carts are parked or stored; or

    (c) cross public roads at designed points to access other parts of the golfing facility.

f.   arising out of the:

(1) ownership of a watercraft by an **insured**;

(2) maintenance, occupancy, operation, use, loading or unloading of watercraft by any person;

(3) entrustment of a watercraft by an **insured** to any person;

(4) failure to supervise or negligent supervision of any person involving a watercraft by an **insured** or;

(5) vicarious liability, whether or not imposed by law, for the actions of a child or minor using a watercraft;

if, at the time and place of an **occurrence**, the involved watercraft is:

(1) operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

(2) rented to others;

(3) used to carry persons or cargo for a charge; or

(4) used for any **business** purpose;

If Exclusion f. does not apply, there is still no coverage for **bodily injury** or **property damage** unless the watercraft:

(1) is stored;

(2) is a sailing vessel, with or without auxiliary power, that is:

    (a) less than 26 feet in overall length; or

    (b) 26 feet or more in overall length and not owned by or rented to an **insured;**

(3) is not a sailing vessel and is powered by:

    (a) an inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

        (i) 50 horsepower or less and not owned by an **insured**; or

        (ii) more than 50 horsepower and not owned by or rented to an **insured; or**

    (b) one or more outboard engines or motors with:

        (i) 25 total horsepower or less;

        (ii) more than 25 horsepower if the outboard engine or motor is not owned by an **insured**;

        (iii) more than 25 horsepower if the outboard engine or motor is owned by an **insured** who acquired it during the policy period; or

        (iv) more than 25 horsepower if the outboard engine or motor is owned by an **insured** who acquired it before the policy period, but only if:

This endorsement contains copyrighted material of the Insurance Services Office, Inc., with its permission 1990 and 1999.

(1) you declare them at policy inception; or

(2) your intent to insure them is reported to us in writing within 45 days after you acquire them.

The coverages in (iii) and (iv) above apply for the policy period.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor.

g.  arising out of the:

(1) ownership of an aircraft by an **insured**;

(2) maintenance, occupancy, operation, use, loading or unloading of aircraft by any person;

(3) entrustment of an aircraft by an **insured** to any person;

(4) failure to supervise or negligent supervision of any person involving an aircraft by an **insured**; or

(5) vicarious liability, whether or not imposed by law, for the actions of a child or minor using an aircraft.

Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo.

i.  arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Under item **2. Coverage E—Personal Liability**, items a.(1), b., and f. are deleted and replaced by the following in all Forms and Endorsement HO-73:

a.(1) for any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in item **4. Loss Assessment** under Section II–Additional Coverages.

b.  **property damage** to property owned by an **insured**. This includes costs or expenses incurred by an **insured** or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an **insured location**;

f.  **bodily injury** to you or an **insured** as defined under Definitions 3.a. or 3.b. This exclusion applies to any claim made or suit brought against you or an **insured** to repay or share damages with another person who may be obligated to pay damages because of **bodily injury** to an **insured**.

## SECTION II—ADDITIONAL COVERAGES

Under item **1. Claim Expenses**, item c. is deleted and replaced by the following and item e. is deleted.

c.  reasonable expenses incurred by an **insured** at our request, including actual loss of earnings (but not loss of other income) up to $200 per day, for assisting us in the investigation or defense of a claim or suit; and

Under **3. Damage to Property of Others**, items e.(1) and e.(3) are deleted and replaced by the following:

(1) a **business** engaged in by an **insured** ;

(3) the ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, watercraft or **motor vehicles**.

This exclusion e.(3) does not apply to a **motor vehicle** that:

(a) is designed for recreational use off public roads;

(b) is not owned by an **insured**; and

(c) at the time of the **occurrence**, is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

Item **4. Loss Assessment** is deleted and replaced by the following:

4.  **Loss Assessment**. We will pay up to $1,000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

a.  **bodily injury** or **property damage** not excluded under Section II of this policy; or

b.  liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

(1) the director, officer or trustee is elected by the members of a corporation or association of property owners; and

(2) the director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the **resident premises**.

This endorsement contains copyrighted material of the Insurance Services Office, Inc., with its permission 1990 and 1999.

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

    a.  one accident, including continuous or repeated exposure to substantially the same general harmful condition; or

    b.  a covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

The following do not apply to this coverage:

1.  Section II—Coverage E—Personal Liability Exclusion 2.a.(1):

2.  Condition 1. Policy Period, Under Sections I and II Conditions.

**SECTION II—CONDITIONS**

Item **1. Limit of Liability**, is deleted and replaced by the following:

1.  **Limit of Liability**.  Our total liability under Coverage E for all damages resulting from any one occurrence will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of **insureds**, claims made or persons injured. All **bodily injury** and **property damage** resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one occurrence. Our total liability under Coverage F for all medical expense payable for **bodily injury** to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

Under Item **3. Duties After Loss**, the first paragraph is deleted and replaced by the following:

3.  **Duties After Loss**. In case of an **occurrence** you or another **insured** will perform the following duties that apply.  We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

Item **6. Suit Against Us** is deleted and replaced by the following:

6.  **Suit Against Us.**

    (a)  No action can be brought against us unless there has been full compliance with all of the terms of this Section II.

    (b)  No one will have the right to join us as a party to any action against an **insured**.

    (c)  Also, no action with respect to Coverage E can be brought against us until the obligation of such **insured** has been determined by final judgment or agreement signed by us.

**SECTION I AND II—CONDITIONS**

Item **2. Concealment or Fraud**, is deleted and replaced by the following:

2.  **Concealment or Fraud**. The entire policy will be void if, whether before or after a loss, an **insured** has:

    a.  intentionally concealed or misrepresented any material fact or circumstance;

    b.  engaged in fraudulent conduct; or

    c.  made false statements;

    relating to this insurance.

Item **3. Liberalization Clause** is deleted and replaced by the following:

3.  **Liberalization Clause**. If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations. This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadening and restrictions in coverage, whether that general program revision is implemented through introduction of a subsequent edition of our policy, or an amendatory endorsement.

Item **10. Our Right To Recompute Premium** is added:

10.  **Our Right To Recompute Premium**. We established the premium for this policy based on the statements you made in the application for insurance. We have the right to recompute the premium if we later obtain information which affects the premium we charged.

**All other provisions of this policy apply.**

This endorsement contains copyrighted material of the Insurance Services Office, Inc., with its permission 1990 and 1999.

CS 350
(01/2002)
ALABAMA

SUPPLEMENTAL PROVISIONS

## SECTION I—EXCLUSIONS

In all forms except forms HO-3 and HO-5, under Section I—Exclusions, the first paragraph and items 1., 2., 3., 4., 5., and 8 are deleted and replaced by the following, and item 9. is added:

We do not insure for loss caused directly or indirectly by any of the following, or which would not have occurred in the absence of one or more of the following excluded events. Such loss is excluded regardless of the cause of the excluded event; other causes of the loss; or any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

1. **Ordinance or Law**, meaning any ordinance or law:

    a. requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This exclusion 1.a. does not apply to the amount of coverage that may be provided for in **Section I—Property Coverages**, item 10. **Additional Coverages;**

    b. the requirements of which result in a loss in value to property; or

    c. requiring any **insured** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

    Pollution means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

    This exclusion 1.a. applies whether or not the property has been physically damaged.

2. **Earth Movement** means:

    a. earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

    b. landslide, mudslide, or mudflow;

    c. subsidence or sinkhole; or

    d. any other earth movement including earth sinking, rising or shifting;

    e. Earth pressures;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire, explosion or breakage of glass or safety glazing material, which is part of a building, storm door or storm window, ensues and then we will pay only for the ensuing loss.

This exclusion 1.b. does not apply to loss by theft.

3. **Water Damage** means:

    a. flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

    b. water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

    c. water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

4. **Power Failure**, meaning the failure of power or other utility service if the failure takes place off the **residence premises**. But if the failure results in a loss, from a Peril Insured Against on the **residence premises**, we will pay for the loss caused by that peril.

5. **Neglect**, meaning neglect of an **insured** to use all reasonable means to save and preserve property at and after the time of loss.

8. **Intentional Loss** meaning any loss arising out of any act an **insured** commits or conspires to commit with the intent to cause a loss.

    In the event of such loss, no **insured** is entitled to coverage, even **insureds** who did not commit or conspire to commit the act causing the loss.

9. **Governmental Action** meaning the destruction, confiscation or seizure of property described in Coverage A, B or C by order of any governmental or public authority.

    This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

In forms HO-3 and HO-, under **Section I—Exclusions**, the first paragraph of item1., items 1.a., 1.b., 1.c., 1.d., 1.e., 1.h., and the first paragraph of item 2 are deleted and replaced by the following; and item 1.i. is added:

1. We do not insure for loss caused directly or indirectly by any of the following, or which would not have occurred in the absence of one or more of the following excluded events. Such loss is excluded regardless of the cause of the excluded event; other causes of the loss; or any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

   a. **Ordinance or Law**, meaning any ordinance or law:

      (1) requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This exclusion 1.a.(1) does not apply to the amount of coverage that may be provided for in **Section I–Property Coverages,** item10. **Additional Coverages**;

      (2) the requirements of which result in a loss in value to property; or

      (3) requiring any **insured** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

      Pollution means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

      This exclusion 1.a. applies whether or not the property has been physically damaged.

   b. Earth Movement means:

      (1) earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

      (2) landslide, mudslide, or mudflow;

      (3) subsidence or sinkhole; or

      (4) any other earth movement including earth sinking, rising or shifting;

      (5) Earth Pressures;

         caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

This exclusion 1.b. does not apply to loss by theft.

   c. **Water Damage** means:

      (1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

      (2) water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

      (3) water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

      caused by or resulting from human or animal forces or any act of nature.

      Direct loss by fire, explosion or theft resulting from water damage is covered.

   d. **Power Failure**, meaning the failure of power or other utility service if the failure takes place off the **residence premises**. But if the failure results in a loss, from a Peril Insured Against on the **residence premises**, we will pay for the loss caused by that peril.

   e. **Neglect**, meaning neglect of an **insured** to use all reasonable means to save and preserve property at and after the time of loss.

   h. **Intentional Loss** meaning any loss arising out of any act an **insured** commits or conspires to commit with the intent to cause a loss.

      In the event of such loss, no **insured** is entitled to coverage, even **insureds** who did not commit or conspire to commit the act causing the loss.

   i. **Governmental Action** meaning the destruction, confiscation or seizure of property described in Coverage A, B or C by order of any governmental or public authority.

      This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

**SECTION I – CONDITIONS**

**Under SECTION I–CONDITIONS**, items 1., the first paragraph of item 2., 2.a., 2.f.(3), the first paragraph of 6., 7., 8. and 12. are deleted and replaced by the following and item 2.h. is added:

1. **Insurable Interest and Limit of Liability**. Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   a. to an **insured** for more than the amount of such **insured's** interest at the time of loss; or

   b. for more than the applicable limit of liability.

2. **Your Duties After Loss.**  In case of a loss to covered property, we have no duty to provide coverage unless there is full failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an **insured** seeking coverage, or a representative of either:

   a. give immediate notice to us or our agent.

   f. (3) submit to examinations under oath, while not in the presence of any other **insured**, and sign the same.

   h. cooperate with us in the investigation of a claim;

6. **Appraisal.**  If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the **residence premises** is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

7. **Other Insurance and Service Agreement.**  If a loss covered by this policy is also covered by:

   a. other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

   b. a service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan,

home warranty or other similar service warranty agreement, even if it is characterized as insurance.

8. **Suit Against Us.**  No action can be brought by any **insured** or mortgagee unless there has been full compliance with all terms under Section I of this policy and the action is started within one year after the date of loss.

12. **Mortgagee Clause.**  The word "mortgagee" includes trustee.

   If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgagee.  A mortgagee making claim under this policy is subject to all conditions of the policy relating to investigation, proof and payment of loss.

   If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   a. notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   b. pays any premium due under this policy on demand if you have neglected to pay the premium; and

   c. submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to comply to do so.  Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

   If the policy is cancelled or not renewed by us, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

   If we pay the mortgagee, and we deny payment to you or the policy is not payable to you by its terms:

   a. we are subrogated to all the rights of the mortgages granted under the mortgage on the property; or

   b. at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgages claim.

All other provisions of this policy apply.

**NO SECTION II—LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS**
**LIMITED SECTION I—PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS**

If an **insured** regularly provides home day care services to person or persons other than the **insureds** and receives monetary or other compensation for such services, that enterprise is a **business**. Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an **insured** to a relative of an **insured** is not considered a **business**.

Therefore, with respect to a home day care enterprise which is considered to be a **business** this policy:

1. does not provide Section II—Liability Coverages because a **business** of an **insured** is excluded under exclusion 1.b.(1) of Section II—Exclusions;

2. does not provide Section I—Coverage B coverage where other structures are used in whole or in part for **business**;

3. limits coverage for property used on the **residence premises** for the home day care enterprise to $2500, because Coverage C—Special Limits of Liability item 9 imposes that limit on **business** property on the **residence premises**;

4. limits coverage for property used off the **residence premises** for the home day care enterprise to $500, because Coverage C—Special Limits of Liability item10 imposes that limit on **business** property off the **residence premises**.

This Endorsement Does Not Constitute A Reduction Of Coverage.

---

**COMMUNICABLE DISEASE AND SEXUAL MISCONDUCT EXCLUSION**

**Section II—Exclusion**

The following exclusion is added to Coverage E—Personal Liability and Coverage F—Medical Payments. This policy does not cover and will not pay for **bodily injury** or **property damage** which arises out of:

1. the transmission of a Communicable Disease by an **insured**;

2. sexual misconduct, sexual molestation, corporal punishment or physical or mental abuse by an **insured** whether or not the acts are in violation of penal or criminal statutes.

This endorsement contains copyrighted material of the
Insurance Services Office, Inc., with its permission 1990 and 1999.

HO 243
(Ed. 01/89)

---

## INFLATION GUARD

---

For an additional premium, the limits of liability for Coverages A, B, C and D will be increased annually by
* % applied pro rata during the policy period.

* Entries may be left blank if shown elsewhere in this policy for this coverage.

**HO 243** (Ed. 01/89)          Copyright, Insurance Services Office, Inc. 1989

CS 216
(Ed. 01/90)

---

## LOSS PREVENTION CREDIT ENDORSEMENT

---

For a premium credit, we acknowledge the following installation and/or conditions where applicable and agreed by you.

1. You agree to maintain in working order any alarm or sprinkler system installed for which you are receiving premium credit. You agree to notify us promptly of any change to or removal of such systems.

2. You agree to notify us promptly if any member of the household has smoked cigarettes, cigars or pipes within the past 12 months and you are receiving a non-smoker premium credit.

**CS 216** (Ed. 01/90)          This endorsement contains copyrighted material of the
Insurance Services Office, Inc. with its permission 1987.



## IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

BY, a Minor, by and through her          *
Next Friend and Mother, Paula Yates,     *
                                         *
         Plaintiffs                      *
                                         *
vs.                                      *      CASE NO. *CV.2007-092*
                                         *
ROBERT STANLEY DANIEL,                   *
EL-BETHEL BAPTIST CHURCH,                *
PEARLS OF PROMISE GIRLS                  *
ACADEMY, EL-BETHEL BAPTIST               *
CHRISTIAN SCHOOL, Fictitious             *
Defendants A through Z, being those      *
persons and/or entities who founded,     *
organized, operate, govern, and control  *
El-Bethel Baptist Church, Pearls         *
of Promise Girls Academy, and El-Bethel  *
Baptist Christian School, whose identities *
are unknown, but who will be added by    *
Amendment when ascertained,              *
                                         *
         Defendants                      *

F....                    ....
                   Je   5/7ml
                   C  ... AY
                   Clerk of Circuit Court

### COMPLAINT

Come now the Plaintiffs in the above-styled cause and show and represent unto the Court

the following:

1. The Plaintiff, BY, is a minor, under the age of nineteen (19) years, is a citizen of the
State of Alabama and is domiciled in Clay County, Alabama at 991 Olive Branch Road, Ashland,
Alabama 36251.

2. The Plaintiff, Paula Yates, is over the age of nineteen (19) years, is a citizen of the
State of Alabama and is domiciled in Clay County, Alabama at 991 Olive Branch Road, Ashland,
Alabama 36251, and is the natural mother of BY.

3. The Defendant, Robert Stanley Daniel, is over the age of nineteen (19) years, is a
citizen of the State of Alabama and is domiciled in Randolph County, Alabama at 2509 County
Road 87, Roanoke, Alabama 36274. The said Defendant is the Pastor of El-Bethel Baptist
Church (hereinafter referred to as "the church") and the Administrator of the Pearls of Promise

1



EXHIBIT
B

Girls Academy (hereinafter referred to as "the academy") and the El-Bethel Baptist Christian School (hereinafter referred to as "the school").

4. On information and belief, the church is a legally cognizable entity, being an unincorporated association of persons comprising a church congregation with its principal and sole place of business being in or near the City of Roanoke, Randolph County, Alabama, with an address of 8485 Highway 431, Roanoke, Alabama 36274.

5. The academy on information and belief, is a legally cognizable entity and is a ministry of El-Bethel Baptist Church and is located at 8485 Highway 431, Roanoke, Randolph County, Alabama 36274.

6. The school is a legally cognizable entity, is a ministry of the church, and is a school operated by and through the Randolph County School System. The school is located at 8485 Highway 431, Roanoke, Randolph County, Alabama 36274.

7. Fictitious Defendants A through Z are those persons and/or entities who founded, organized, operate, govern, and control the church, the academy, and the school, whose identities are unknown, but who will be added by Amendment when ascertained.

## STATEMENT OF THE FACTS

8. The minor Plaintiff, BY, was enrolled and began attending the school and the academy in October, 2005 and remained a student until May, 2007. During this time frame, the minor Plaintiff at times resided in the parsonage of the Defendant, the church with other young girls enrolled at the academy and the Defendant, Robert Stanley Daniel and his wife, and later in the residence quarters constructed for the academy located at or near 8485 Highway 431, Roanoke, Randolph County, Alabama 36274.

9. While the minor Plaintiff, BY, was enrolled in the academy and attending the school and the church, and while living on the grounds of the academy, school, and church in the parsonage occupied by the Defendant, Robert Stanley Daniel, and later in the residence quarters of the academy, the Defendant, Robert Stanley Daniel, used his position of authority and trust as the Pastor of the church and the Administrator of the academy, and the school to engage the minor Plaintiff, BY, in inappropriate and perverted acts. The said Robert Stanley Daniel willfully and craftily garnered the trust of the minor Plaintiff, BY, to satisfy his own perverted desires and prurient interests.

10. The Defendant, Robert Stanley Daniel, began providing the minor Plaintiff, BY, with prescription drugs, including Ambien and Loratab, on a regular basis. Further, this Defendant allowed the minor Plaintiff, BY, and, in fact, encouraged her to break the rules and regulations established for students of the Pearls of Promise Girls Academy, and for these favors inquired of the minor Plaintiff as to what she was going to do for him.

2

07/11/2007 10:30 FAX 3348632706 CSC    MORRISON INS AGENCY    Filed 05/22/2008    Page 39 of 44
07/02/2007  22:51    256357.  2    CIRCUITCLER    PAGE  83

Case 3:07-cv-00843-WKW-CSC    Document 19-2    Filed 05/22/2008    Page 39 of 44

11. The Defendant, Robert Stanley Daniel, sexually molested the minor Plaintiff, BY, on a number of occasions while on the premises of the academy, the school, and the church in Roanoke, Randolph County, Alabama by fondling her, kissing her, and rubbing and penetrating her vagina. The Defendant, Robert Stanley Daniel, forced the minor Plaintiff, BY, to perform oral sex on him.

12. The Defendant, Robert Stanley Daniel, has distributed to the minor Plaintiff, BY, pornographic and lewd text messages and photos, including photos of his genital area while in an aroused state, and has harassed and intimidated the minor Plaintiff, BY, by leaving voice mails on her cell phone that vividly describe the sexual acts he intended to perform on her in the future.

13. All of the acts of the Defendant, Robert Stanley Daniel, as set forth herein, were done and performed while the said Robert Stanley Daniel was the Pastor of the church and the Administrator of the academy as well as the school and occurred on the grounds of the church, academy, and school at said time and place the Defendant, Robert Stanley Daniel, and the other Defendants owed a duty to the Plaintiffs to follow the missions and goals of the church, academy, and school, and to protect the minor Plaintiff from abuse while providing her an education in a loving, Christian environment.

## COUNT I

## ASSAULT AND BATTERY

14. The Plaintiffs hereby incorporate, by reference, paragraphs 1 through 13 above of the Complaint as if fully set forth herein.

15. The Defendant, Robert Stanley Daniel, on various occasions in the Spring of 2007 maliciously, willfully, wantonly, and with reckless disregard for the minor Plaintiff, BY, did sexually assault and inflict unlawful physical and forcible contact on the body of the minor Plaintiff, BY, without her consent.

16. As a direct and proximate result of the actions of the Defendant, Robert Stanley Daniel, the minor Plaintiff, BY, suffered physical injury. The minor Plaintiff, BY, was also caused to suffer and will continue to suffer severe emotional distress and mental anguish as a direct and proximate result of the actions of the Defendant, Robert Stanley Daniel. The Plaintiffs have and will continue to incur expenses in an effort to restore the psychological well-being of the minor Plaintiff, BY, as a direct and proximate result of the actions of the Defendant, Robert Stanley Daniel. The Plaintiff, Paula Yates, as the mother of said minor Plaintiff, has suffered and will continue to suffer emotional distress and mental anguish as a direct and proximate result of the actions of the Defendant, Robert Stanley Daniel. The Plaintiff, Paula Yates, has suffered the loss of consortium with her minor daughter and her family has been irreparably harmed.

3

17. The Plaintiffs claim punitive damages of the Defendant, Robert Stanley Daniel, because of the willful and malicious nature of this Defendant's acts.

## COUNT II

## NEGLIGENCE AND/OR WANTONNESS

18. The Plaintiffs incorporate, by reference, paragraphs 1 through 17 above of the Complaint as if fully set forth herein.

19. Each of the Defendants had a duty to protect the minor Plaintiff, BY, from harm while on the premises of each of the Defendants and while said minor Plaintiff was enrolled in the academy and school and resided in Defendant's parsonage and/or the academy's residence hall.

20. The Defendants negligently and/or wantonly breached their duty owed to the Plaintiffs by allowing the minor Plaintiff, BY, to be sexually molested and abused while under the care, supervision, and control of the Defendants.

21. As a direct and proximate result of the actions of the Defendant, Robert Stanley Daniel, the minor Plaintiff, BY, suffered physical injury. The minor Plaintiff, BY, was also caused to suffer and will continue to suffer severe emotional distress and mental anguish as a direct and proximate result of the actions of the Defendant, Robert Stanley Daniel. The Plaintiffs have and will continue to incur expenses in an effort to restore the psychological well-being of the minor Plaintiff, BY, as a direct and proximate result of the actions of the Defendant, Robert Stanley Daniel. The Plaintiff, Paula Yates, as the mother of said minor Plaintiff, has suffered and will continue to suffer emotional distress and mental anguish as a direct and proximate result of the actions of the Defendant, Robert Stanley Daniel. The Plaintiff, Paula Yates, has suffered the loss of consortium with her minor daughter and her family has been irreparably harmed.

22. The Plaintiffs claim punitive damages of the Defendants because of the willful and malicious nature of the Defendant's acts.

## COUNT III

## NEGLIGENT AND/OR WANTON INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

23. The Plaintiffs hereby incorporate, by reference, paragraphs 1 through 22 above of the Complaint as if fully set forth herein.

24. The Defendant, Robert Stanley Daniel, as well as the other Defendants named herein, knew or should have known that the acts of the said Robert Stanley Daniel in sexually molesting

4

07/11/2007 10:11 FAX 3248632706 CSC          MORRISON INS AGENCY          Case 3:07-cv-00843-WRW-CSC     Document 11-2     Filed 05/22/2008     Page 41 of 44

07/02/2007  22:51     25635    12                CIRCUITCLER                                                  PAGE  05

and abusing the minor Plaintiff, BY, would cause the Plaintiffs to suffer severe emotional distress.

25. The acts of the Defendant, Robert Stanley Daniel, did, in fact, cause each of the Plaintiffs to suffer severe emotional distress.

26. As a direct and proximate result of the actions of the Defendant, Robert Stanley Daniel, the minor Plaintiff, BY, suffered physical injury. The minor Plaintiff, BY, was also caused to suffer and will continue to suffer severe emotional distress and mental anguish as a direct and proximate result of the actions of the Defendant, Robert Stanley Daniel. The Plaintiffs have and will continue to incur expenses in an effort to restore the psychological well-being of the minor Plaintiff, BY, as a direct and proximate result of the actions of the Defendant, Robert Stanley Daniel. The Plaintiff, Paula Yates, as the mother of said minor Plaintiff, has suffered and will continue to suffer emotional distress and mental anguish as a direct and proximate result of the actions of the Defendant, Robert Stanley Daniel. The Plaintiff, Paula Yates, has suffered the loss of consortium with her minor daughter and her family has been irreparably harmed.

27. The Plaintiffs claim punitive damages of the Defendants because of the willful and malicious nature of the Defendant's acts.

## INVASION OF PRIVACY

28. The Plaintiffs hereby incorporate, by reference, paragraphs 1 through 27 above of the Complaint as if fully set forth herein.

29. At various times while the minor Plaintiff was attending the church, the school, and was a resident of the academy, the Defendant, Robert Stanley Daniel, did wrongfully intrude upon the minor Plaintiff's physical solitude or seclusion and the minor Plaintiff's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibility.

30. After the minor Plaintiff, BY, had left the academy, the school, and the church and was no longer on the premises where these Defendants are located, the Defendant, Robert Stanley Daniel, did wrongfully intrude upon each of the Plaintiff's physical solitude or seclusion and the Plaintiff's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibility in that the Defendant, Robert Stanley Daniel, forwarded voice messages, text messages, and photographs of an extremely lewd and lascivious nature to the cell phones of each of the Plaintiffs. The photographs so forwarded were of the Defendant, Robert Stanley Daniel, including his genital area in an aroused state.

31. As a direct and proximate result of the actions of the Defendant, Robert Stanley Daniel, the minor Plaintiff, BY, suffered physical injury. The minor Plaintiff, BY, was also caused to suffer and will continue to suffer severe emotional distress and mental anguish as a

5

direct and proximate result of the actions of the Defendant, Robert Stanley Daniel. The Plaintiffs have and will continue to incur expenses in an effort to restore the psychological well-being of the minor Plaintiff, BY, as a direct and proximate result of the actions of the Defendant, Robert Stanley Daniel. The Plaintiff, Paula Yates, as the mother of said minor Plaintiff, has suffered and will continue to suffer emotional distress and mental anguish as a direct and proximate result of the actions of the Defendant, Robert Stanley Daniel. The Plaintiff, Paula Yates, has suffered the loss of consortium with her minor daughter and her family has been irreparably harmed.

32.  The Plaintiffs claim punitive damages of the Defendants because of the willful and malicious nature of the Defendant's acts.

## BREACH OF FIDUCIARY DUTY

33.  The Plaintiffs hereby incorporate, by reference, paragraphs 1 through 32 above of the Complaint as if fully set forth herein.

34.  Upon enrollment of the minor Plaintiff in the school and upon becoming a resident of the academy and a member of the church, each of the Defendants undertook a fiduciary duty to the Plaintiffs to properly care for and protect the minor Plaintiff; to provide her guidance and education, as well as love and emotional support as set forth in the mission goals of the academy. The Defendants undertook a fiduciary duty to the Plaintiffs to provide the minor Plaintiff, BY, among other things, the following: (a) to offer young people in a future through love, Christian counseling, teaching, and a education based on God's word; (b) to provide an environment where God care heal the hurts, the scars, and the broken heart, and recreate a pure heart; (c) to free young people from the bondage holding them captive, e.g. drugs, physical, mental, and emotional abuse; (d) to teach skills which will prepare youth to become responsible and self-supporting members of society; (e) to provide a safe, Christian environment where teenagers are lifted from the miry clay they are trapped in.

35.  The Defendants, in fact, breached their fiduciary duty owed to the Plaintiffs by allowing the Defendant, Robert Stanley Daniel, to sexually molest and abuse the minor Plaintiff, BY, and to thereafter forward lewd and lascivious messages and photographs to the Plaintiffs.

36.  As a direct and proximate result of the actions of the Defendant, Robert Stanley Daniel, the minor Plaintiff, BY, suffered physical injury. The minor Plaintiff, BY, was also caused to suffer and will continue to suffer severe emotional distress and mental anguish as a direct and proximate result of the actions of the Defendant, Robert Stanley Daniel. The Plaintiffs have and will continue to incur expenses in an effort to restore the psychological well-being of the minor Plaintiff, BY, as a direct and proximate result of the actions of the Defendant, Robert Stanley Daniel. The Plaintiff, Paula Yates, as the mother of said minor Plaintiff, has suffered and will continue to suffer emotional distress and mental anguish as a direct and proximate result of the actions of the Defendant, Robert Stanley Daniel. The Plaintiff, Paula Yates, has suffered the loss of consortium with her minor daughter and her family has been irreparably harmed.

6

37. The Plaintiffs claim punitive damages of the Defendants because of the willful and malicious nature of the Defendant's acts.

## OUTRAGE

38. The Plaintiffs hereby incorporate, by reference, paragraphs 1 through 37 above of the Complaint as if fully set forth herein.

39. Each of the Defendants caused the minor Plaintiff, BY, to suffer physical and emotional distress in other such manners as alleged herein and caused the Plaintiff, Paula Yates, to suffer emotional distress. The said actions toward the Plaintiffs were so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and are atrocious and utterly intolerable in a civilized society. The emotional distress and bodily injury that the Defendant caused Plaintiffs to suffer was so severe that no reasonable person could be expected to endure it.

40. As a direct and proximate result of the actions of the Defendant, Robert Stanley Daniel, the minor Plaintiff, BY, suffered physical injury. The minor Plaintiff, BY, was also caused to suffer and will continue to suffer severe emotional distress and mental anguish as a direct and proximate result of the actions of the Defendant, Robert Stanley Daniel. The Plaintiffs have and will continue to incur expenses in an effort to restore the psychological well-being of the minor Plaintiff, BY, as a direct and proximate result of the actions of the Defendant, Robert Stanley Daniel. The Plaintiff, Paula Yates, as the mother of said minor Plaintiff, has suffered and will continue to suffer emotional distress and mental anguish as a direct and proximate result of the actions of the Defendant, Robert Stanley Daniel. The Plaintiff, Paula Yates, has suffered the loss of consortium with her minor daughter and her family has been irreparably harmed.

41. The Plaintiffs claim punitive damages of the Defendants because of the willful and malicious nature of the Defendant's acts.

WHEREFORE, the Plaintiffs request the following relief:

1. That an award of compensatory damages for BY, a minor, who sues by and through her next friend and mother, Paula Yates, in a fair and reasonable amount, to be determined by a jury for which each Defendant be held jointly and severally liable.

2. An award of compensatory damages for Paula Yates, individually, in a fair and reasonable amount, to be determined by a jury for which each Defendant be held jointly and severally liable.

3. An award of punitive damages against each of the Defendants in an amount to be determined by the trier of fact.

7

4.  Your Plaintiffs request any different and/or additional relief to which they are entitled these premises considered.


_(signature)_

Ronald S. Held   (HEL007)
Attorney for Plaintiffs


OF COUNSEL:

Sides, Oglesby, Held, Dick & Burgess, LLC
1310 Leighton Avenue
Post Office Box 1849
Anniston, Alabama 36202
Telephone: (256) 237-6611
Facsimile: (256) 237-1015


The Plaintiffs hereby demand trial
by a struck jury.

_(signature)_

Ronald S. Held


8