IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

COTTON STATES MUTUAL INS. CO., )
)
        Plaintiff, )
)
    v. )    CASE NO. 3:07-CV-843-WKW
)
ROBERT STANLEY DANIEL, )
)
        Defendant. )

## MEMORANDUM OPINION AND ORDER

Before the court is a Motion for Summary Judgment (Doc. # 18), filed by Plaintiff Cotton States Mutual Insurance Co. ("Cotton States"). Cotton States moves for a declaratory judgment and for summary judgment that it has no duty to defend or indemnify its insured, Robert Stanley Daniel ("Mr. Daniel"), in a pending state court lawsuit brought against him. The motion is accompanied by a brief and evidence. (Doc. # 19.) Mr. Daniel filed a Brief in Opposition to Cotton States's Motion for Summary Judgment. (Doc. # 21.) After careful consideration of the arguments of counsel, the relevant law and the record as a whole, the court finds that the motion is due to be granted.

## I. JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations of each.

## II.  STANDARD OF REVIEW

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Under Rule 56, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).  The movant can meet this burden by presenting evidence showing that there is no genuine issue of material fact, or by showing that the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex Corp.*, 477 U.S. at 322-23.

Once the moving party has met its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A genuine factual dispute exists if "a reasonable jury could return a verdict for the non-moving party." *Damon v. Fleming Supermarkets, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (internal quotation marks and citation omitted).  After the nonmoving party has responded to the motion for summary

judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

### III.  FACTS

It is undisputed that Mr. Daniel is insured by a homeowner's policy issued by Cotton States (policy number AH00193958) and that the policy period began on November 4, 2005. (Doc. # 19 (Pl. Ex. A, Policy); Doc. # 1 (Ex. B, Declaration Page).)  Mr. Daniel made a claim pursuant to this policy for defense and indemnity with regard to a lawsuit filed against him on July 11, 2007, in the Circuit Court of Randolph County, Alabama, by Paula Yates, suing on behalf of her minor daughter ("minor").  In response, on September 17, 2007, Cotton States brought this action, pursuant to 28 U.S.C. § 2201, for a judgment declaring that it has no duty to defend or to indemnify Mr. Daniel in the underlying state court action.  (Doc. # 1 (Compl. at 1)); (Doc. # 19 (Pl. Ex. B at 1, State Ct. Compl.).)  The facts alleged in the state court complaint are as follows.

From October 2005 to May 2007, the minor attended the Pearls of Promise Girls Academy ("academy") and El Bethel Baptist Christian School ("school"), ministries of El Bethel Baptist Church ("church") in Roanoke, Alabama.  (Pl. Ex. B ¶ 8.)  While attending the school, the minor lived in several residences on the premises of the academy, school and church.  (Pl. Ex. B ¶ 8.)  Mr. Daniel was the pastor of the church and the administrator of the academy and school.  (Pl. Ex. B ¶ 3.)  During the minor's enrollment, Mr. Daniel allegedly "sexually molested" the minor, including "fondling" her," "kissing her," having vaginal intercourse with her, and forcing her "to perform oral sex on him."  (Pl. Ex. B ¶ 11.)  Mr.

Daniel also allegedly distributed to the minor "pornographic and lewd text messages and photos, including photos of his genital area while in an aroused state," and left harassing and intimidating voice mails on the minor's cell phone, "vividly describ[ing] the sexual acts he intended to perform on her in the future."  (Pl. Ex. B ¶ 12.)  It is further alleged that Mr. Daniel "used his position of authority and trust" to engage the minor in these "inappropriate and perverted acts," (Pl. Ex. B ¶ 9), and that the sexual molestation occurred "on the grounds of the church, academy, and school."  (Pl. Ex. B ¶ 13.)  The complaint further sets out that Mr. Daniel regularly provided the minor "with prescription drugs, including Ambien and Loratab [sic]," and permitted the minor "to break the [academy's] rules and regulations," but in return "for these favors[,] inquired of [the minor] as to what she was going to do for him." (Pl. Ex. B ¶ 10.)

The underlying state court complaint against Mr. Daniel[1] contains six counts, seeking unspecified compensatory and punitive damages for assault and battery (Count I), negligence and/or wantonness (Count II), negligent, wanton and/or intentional infliction of emotional distress (Count III), invasion of privacy (Count IV), breach of fiduciary duty (Count V), and outrage (Count VI).  (Pl. Ex. B at 3-8.)  Cotton States contends that all of these claims brought against Mr. Daniel in the state court action either are not covered by the

---

[1] The church, academy and school also are named as defendants.

homeowner's policy or are excluded from coverage.[2]  Pursuant to the homeowner's policy

Cotton States issued to Mr. Daniel, Cotton States agrees that

> [i]f a claim is made or a suit is brought against an **insured** for damages
> because of bodily injury or **property damage** caused by an occurrence to
> which this coverage applies, we will:
>
> 1. pay up to our limit of liability for the damages for which
>    the **insured** is legally liable; and
> 2. provide a defense at our expense by counsel of our
>    choice, even if the suit is groundless, false or fraudulent.
>    We may investigate and settle any claim or suit that we
>    decide is appropriate.  Our duty to settle or defend ends
>    when the amount we pay for damages resulting from the
>    **occurrence** equals our limit of liability.

(Pl. Ex. A at 10 (emphasis in original).)  The policy defines "bodily injury" as "bodily harm,

sickness or disease, including required care, loss of services and death that results," and

"occurrence" as "an accident, including exposure to conditions, which results, during the

policy period, in . . . **bodily injury**; or . . . **property damage**."  (Pl. Ex. A at 1.)

The policy also contains various exclusions for liability.  The intentional acts

exclusion precludes coverage for "bodily injury or property damages . . . which is expected

or intended by the **insured**."  (Pl. Ex. A at 11.)  There also is a "business pursuits" exclusion,

as well as a "sexual misconduct" exclusion.  (Pl. Ex. A at 11; Pl. Ex. A at 16 (Endorsement).)

## IV.  DISCUSSION

The summary judgment motion brings to the forefront Cotton States's duties, if any,

under the homeowner's policy to defend and indemnify Mr. Daniel in the underlying state

court action.  Cotton States contends that Mr. Daniel fails to demonstrate that there exists a

---

[2] The court notes that there is no allegation or argument by Cotton States that the acts forming
the basis of the state court complaint occurred outside the policy's coverage period.

genuine issue of material fact regarding whether his acts, as alleged in the underlying state court complaint, constitute an "occurrence" under the homeowner's policy at issue.  (Doc. # 19 (Pl. Summ. J. Br. at 4-5).)  Alternatively, Cotton States argues that, even if Mr. Daniel's acts constitute an "occurrence," there is no coverage because of the policy exclusions for (1) intentional acts, (2) sexual misconduct and (3) business pursuits.  (Pl. Summ. J. Br. at 5-8.) Mr. Daniel opposes all of Cotton States's arguments.  (Doc. # 21 (Def. Summ. J. Resp. at 7-15).)  For the reasons set out below, the court agrees with Cotton States that it has submitted undisputed evidence demonstrating that the exclusion for intentional acts precludes coverage.[3]

The parties do not dispute that Alabama law governs the substantive issues in this diversity action.  An insurer's duty to defend "is determined primarily by the allegations contained in the complaint."  *Hartford Cas. Ins. Co. v. Merchs. & Farmers Bank*, 928 So. 2d 1006, 1009 (Ala. 2005) (internal quotation marks omitted).  When analyzing the allegations, "it is the facts, not the legal phraseology, that determine whether an insurer has a duty to defend its insured in the action," and if those "facts are irreconcilable with a legal theory, such as 'negligence,' asserted in the complaint, the facts, not the mere assertion of the legal theory, determine an insurer's duty to defend."  *Id.* at 1012.  "If the allegations of the injured

---

[3] Consequently, it is unnecessary for the court to decide whether these acts constitute an "occurrence," or whether coverage is excluded under the separate sexual misconduct exclusion or, more specifically, to address Mr. Daniel's argument that the applicability of the latter exclusion presents a genuine issue of material fact because the policy does not define "sexual misconduct."  (Def. Summ. J. Resp. at 11-12.)  For the same reason, the court need not resolve the parties' competing arguments relating to the policy's business pursuits exclusion.  (Compare Pl. Summ. J. Br. at 8 with Def. Summ. J. Resp. at 13-15.)

party's complaint show an accident or an occurrence within the coverage of the policy, then the insurer is obligated to defend, regardless of the ultimate liability of the insured." *Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1063-64 (Ala. 2003) (emphasis omitted). If, though, the complaint's allegations show the non-existence of coverage, "the court is not limited to the bare allegations of the complaint in the action against [the] insured but may look to facts which may be proved by admissible evidence." *Hartford Cas. Ins. Co.*, 928 So. 2d at 1010 (internal quotation marks omitted). The insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy, *Colonial Life & Accident Ins. Co. v. Collins*, 194 So. 2d 532, 535 (Ala. 1967), while the insurer bears the burden of proving the applicability of any policy exclusion. *Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc.*, 990 F.2d 598, 605 (11th Cir. 1993).

An insurer's duty to indemnify generally must be examined independently from its duty to defend, *Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789, 792 (Ala. 2002), and "[t]he insured's conduct rather than the allegedly injured person's allegations determine whether the insurer has a duty to indemnify," *Tanner*, 874 So. 2d at 1066. There is an exception to this general rule to be discussed below.

In addition to the foregoing general principles, *State Farm Fire & Casualty Company v. Davis*, has particular relevance in this case, given Cotton States's reliance on the policy's intentional acts exclusion. *See* 612 So. 2d 458 (Ala. 1993). *Davis* interpreted an intentional acts exclusion substantively identical to the one in the case, *i.e.*, one excluding coverage for "bodily injury . . . which is either expected or intended by an insured." *Id.* at 460. In *Davis*,

the court was confronted with a factual scenario where four mothers, suing in state court on behalf of their minor daughters, sued one Jerry Davis, alleging that he sexually abused and molested their daughters, *id.* at 459, and Jerry Davis's wife, alleging that she breached "a duty to report the egregious conduct of her husband," *id.* at 466.  The issue was whether the insurer, "under the terms of a homeowner's policy, was under a duty to defend its insureds in [the state court] action against its insureds alleging sexual abuse and molestation of minor children." *Id.* at 459.

The *Davis* court explained that typically the subjective intent test applies to determine if an insured "'expected or intended' to inflict bodily injury upon another, within the meaning of a policy's intentional acts exclusion," reiterating that

> [u]nder this subjective test, an injury is 'intended from the standpoint of the insured' if the insured possessed the specific intent to cause bodily injury to another, whereas an injury is 'expected from the standpoint of the insured' if the insured subjectively possessed a high degree of certainty that bodily injury to another would result from his or her act.

*Id.* at 460.  "In Alabama, because of this subjective intent test, whether an injury the insured inflicts upon another person is 'expected or intended' from the standpoint of the insured is generally a question of fact for the jury or judge." *Id.* at 461.

In *Davis*, however, the court "create[d] one narrow exception [to the subjective intent rule] in cases of sexual abuse of children" and "adopted the inferred-intent rule in child sex abuse cases." *Id.* at 464.  The inferred-intent rule "stands for the proposition that a person who sexually manipulates a minor cannot expect his insurer to cover his misconduct and cannot obtain such coverage simply by saying that he did not mean any harm." *Id.* at 465

(internal quotation marks omitted).  "[S]exual misconduct with a minor is objectively so substantially certain to result in harm to the minor victim, that the perpetrator cannot be allowed to escape society's determination that he is expected to know that." *Id.* (internal quotation marks omitted).  "[I]ntent to harm," therefore, is "infer[red] . . . as a matter of law in sexual misconduct cases involving minors." *Id.*; *see also Universal Underwriters Ins. Co.*, 990 F.2d at 603 ("Alabama has affirmatively adopted an irrebuttable presumption of intent to cause injury . . . in the realm of the sexual abuse and molestation of children.") (citing *Davis*).  Furthermore, the *Davis* court made clear that in a sexual abuse case, "the insurer has no duty to indemnify the insured and no duty to defend the insured."  612 So. 2d at 465. "Although the law in Alabama holds that an insurer's duty to defend can be broader than its duty to pay, we find the two duties inseparable in this type of case." *Id.*

The court finds that *Davis*, the sole case upon which both parties rely to support their divergent positions, is controlling on the question of whether the policy's intentional acts exclusion relieves Cotton States of its duty to defend and indemnify Mr. Daniel.  Mr. Daniel does not dispute that the assault and battery claim in Count I "is based solely upon the alleged sexual misconduct of [Mr. Daniel]" (Def. Summ. J. Resp. at 9) and, thus, upon an intentional act from which Mr. Daniel's intent to harm is implied as a matter of law, given the alleged victim's status as a minor.  *See Davis*, 612 So. 2d at 464-65.  In short, as to the sexual misconduct allegations, Mr. Daniel does not contest that the inferred-intent rule applies.  Mr. Daniel also does not dispute that "[t]he alleged sexual misconduct of [Mr. Daniel] . . . make[s] up a large portion of the underlying lawsuit."  (Def. Summ. J. Resp. at 13.)  Mr.

Daniel, however, disputes Cotton States's contention that all of the claims are based upon Mr. Daniel's alleged sexual molestation of the minor.  (Def. Summ. J. Resp. at 7.)  Namely, he says that the allegations that Mr. Daniel unlawfully provided prescription drugs to the minor are "totally separate from [Mr. Daniel's] alleged sexual misconduct" and, thus, are governed by the subjective intent test.  (Def. Summ. J. Resp. at 10-13.)  Because the subjective intent test presents a question of fact for the fact-finder, *Davis*, 612 So. 2d at 461, Mr. Daniel says that this declaratory judgment action cannot be resolved at the summary judgment stage.  (Def. Summ. J. Resp. at 8.)  Mr. Daniel's argument is not persuasive.

The allegations pertaining to Mr. Daniel's supplying the minor with prescription drugs cannot be read in a vacuum.  The first sentence of paragraph ten in the "Statement of the Facts" alleges that Mr. Daniel "began providing the minor . . . with prescription drugs, including Ambien and Loratab [sic], on a regular basis."  (Pl. Ex. B ¶ 10.)  The paragraph, however, does not end there.  The next sentence establishes that there was a *quid pro quo* for the provision of prescription drugs, namely, "for these favors [Mr. Daniel] inquired of the minor . . . as to what she was going to do for him."  (Pl. Ex. B ¶ 10.)  The court finds that, fairly read against the backdrop of the complaint as a whole, *sexual* acts were the *quid pro quo* for the provision of prescription drugs and that these allegations clearly point to intentional action by Mr. Daniel to subject his victim to further sexual molestation.  Moreover, no count in the state court complaint discusses Mr. Daniel's provision of prescription drugs to the minor as a claim separate or apart from the sexual molestation and

10

abuse.  To the contrary, as set out in the footnote below, each claim is built on the premise that Mr. Daniel sexually molested and abused the minor.[4]

Mr. Daniel also suggests that the allegations pertaining to "electronic communications" sent from him to the minor arguably fall outside of *Davis*'s reach because the fact-finder could conclude that the communications were not sexual in nature.  (Def. Summ. J. Resp. at 12-13.)  As alleged, however, the allegations clearly specify intentional acts by Mr. Daniel to expose the minor to sexually explicit materials and messages, specifically, "pornographic and lewd text messages and photos, including photos of his genital area while in an aroused state" and descriptions of "sexual acts he intended to perform on [the minor] in the future."  (Pl. Ex. B ¶ 12.)  Indeed, Mr. Daniel concedes that the communications alleged in the complaint are "sexual in nature."  (Def. Summ. J. Resp. at 11.)  Thus, for the court to consider Mr. Daniel's argument, it must be supported by facts outside the complaint which are provable by admissible evidence.  *See Hartford Cas. Ins. Co.*, 928 So. 2d at 1010.  Mr. Daniel, however, has not submitted such other facts or even argued that they exist.

---

[4]  (*See* Pl. Ex. B ¶ 20 (Count II), alleging that Mr. Daniel breached his duty to protect the minor from harm by "sexually molest[ing] and abus[ing]" her); (Pl. Ex. B. ¶ 24 (Count III), alleging that Mr. Daniel "knew or should have known that [his] acts . . . in sexually molesting and abusing the minor . . . would cause [her] to suffer severe emotional distress"); (Pl. Ex. B ¶ 30 (Count IV), alleging that Mr. Daniel "forwarded voice messages, text messages, and photographs of an extremely lewd and lascivious nature" to the minor's cell phone, including photographs of Mr. Daniel's "genital area in an aroused state"); (Pl. Ex. B ¶ 35 (Count V), alleging that Mr. Daniels breached his fiduciary duty to the minor by "sexually molest[ing] and abus[ing]" her and by "thereafter forward[ing] lewd and lascivious messages and photographs" to the minor); (Pl. Ex. B ¶ 39 (Count VI), alleging that Mr. Daniel caused the minor "to suffer physical and emotional distress in other such manners as alleged [in the complaint]").)

Finally, while the argument is not entirely clear, to the extent that Mr. Daniel is saying that the claims for negligence (Count II) and negligent infliction of emotional distress (Count III) are sufficient to support an "occurrence" under the terms of the policy (*see* Def. Summ. J. Resp. at 13-14), the court disagrees.[5] To ascertain whether Cotton States owes Mr. Daniel a duty to defend, the court focuses on the factual allegations in the complaint, not on the legal theories asserted. *See Hartford Cas. Ins. Co.*, 928 So. 2d at 1011. The facts that form the basis of these two claims are Mr. Daniel's intentional acts of "sexually molesting and abusing" the minor. (Pl. Ex. B ¶ 24 (Count III); *accord* Pl. Ex. B ¶ 20 (Count II).) As pleaded, the minor's alleged "physical injury," "emotional distress and mental anguish" are the direct result of Mr. Daniel's intentional and sexually abusive acts, and are not caused by any negligent act on the part of Mr. Daniel.[6] There is no uncertainty from these alleged facts; Mr. Daniel's alleged conduct was intentional. The claims for negligence, therefore, do not bring the allegations outside the scope of the intentional acts exclusion. *See Hartford Cas. Ins. Co.*, 928 So. 2d at 1012.

In sum, reading the underlying state court complaint as a whole, the court finds that all claims are premised on Mr. Daniel's intentional acts of sexually molesting and abusing

---

[5] Incidentally, the court notes that Alabama law does not recognize a cause of action for negligent infliction of emotional distress. *Gideon v. Norfolk S. Corp.,* 633 So. 2d 453, 453-54 (Ala. 1994).

[6] *Davis*'s holding pertaining to coverage for the wife lends support to the court's conclusion. There, the wife argued "that she should be afforded coverage because she was not accused of any intentional act, but only a breach of a duty to report the egregious conduct of her husband." *Davis*, 612 So. 2d at 466. Rejecting the argument, the Supreme Court of Alabama held that the intentional acts exclusion precluded coverage for the wife "for harm directly attributable to the intentional conduct of her husband, Jerry Davis." *Id.*

the minor and, thus, are couched entirely within the policy's intentional acts exclusion. Moreover, because the complaint alleges that Mr. Daniel engaged in sexual misconduct with a child, *Davis*'s inferred-intent rule applies, and Cotton States's duty to defend is coextensive with its duty to indemnify.  It follows that there are no disputed issues of material fact regarding whether there is coverage in this case.  Consequently, Cotton States owes neither a duty to defend nor a duty to indemnify Mr. Daniel, and summary judgment is due to be entered in Cotton States's favor.

## V.  CONCLUSION

For the foregoing reasons, it is ORDERED that Plaintiff Cotton States Mutual Insurance Co.'s Motion for Summary Judgment (Doc. # 18) on its complaint for declaratory judgment is GRANTED.  An appropriate judgment will be entered.

DONE this 20th day of November, 2008.

/s/   W.  Keith Watkins
UNITED STATES DISTRICT JUDGE

13